STATE of Minnesota, By Warren
SPANNAUS, its Attorney
General, Respondent,

v.

NORTHWESTERN BELL TELEPHONE
COMPANY, Appellant.

No. 50830.

Supreme Court of Minnesota.

March 6, 1981.

Maun, Green, Hayes, Simon, Murray & Johanneson, Joseph A. Maun, and James A. Gallagher, St. Paul, Garfield E. Lovaas and Richard L. Johnson, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Jean E. Heilman, and Craig R. Anderson, Sp. Asst. Attys. Gen., St. Paul, for respondent.

OTIS, Justice.

The state, by the attorney general, brought this action on behalf of Minnesota subscribers receiving telephone service furnished by Northwestern Bell through exchanges located in North Dakota to compel the company to calculate and refund to these subscribers increases it charged them from September 1, 1977, to May 22, 1978, pursuant to a revised schedule of rates approved by the North Dakota Public Service Commission in August 1977 but not approved by the Public Service Commission of this state until May 22, 1978. The lower court granted summary judgment in favor of the state, rejecting the company's claims that the Minnesota Commission has no jurisdiction over the rates in question; that the action is barred because an appeal was taken from the Commission's order of May 22, 1978; and that an action for restitution is not authorized by statute. We affirm.

The facts are not in dispute. Minn.Stat. § 237.06 (1980) requires telephone companies to furnish reasonably adequate services and facilities at fair and reasonable rates "for the intrastate use thereof," expressly declaring unreasonable rates to be unlawful. Section 237.07 requires a telephone company to file with the Department of Public Service "a schedule of its exchange rates, tolls, and charges for every kind of service," and section 237.075, subdivision 1 provides in pertinent part:

Unless the commission otherwise orders, no telephone company shall change any rate which has been duly established under this chapter, except after 90 days notice to the commission. The notice shall include statements of facts, expert opinions, substantiating documents, and exhibits, supporting the change requested, and state the change proposed to be made in the rates then in force, and the time when the modified rates will go into effect.

Section 237.075 was enacted in 1977 and became effective on June 3, 1977. 1977 Minn.Laws, ch. 359, § 7.

Notwithstanding these statutes, the company, after obtaining the approval of North Dakota Public Service Commission of proposed rate increases in August 1977, began charging Minnesota subscribers served through North Dakota exchanges the increased rates on September 1, 1977. A schedule of its former rates remained on file with the Public Service Commission of this state. On February 8, 1978, the company sent the Minnesota Commission a copy of the tariff sheets reflecting the rates approved by the North Dakota Commission in August 1977 and a memorandum stating that the rates had been approved by that body effective September 1, 1977. The memorandum did not state "the time when the modified rates will go into effect," nor did it state that the company had already begun to charge the Minnesota residents receiving telephone service through the North Dakota exchanges the increased rates.

On May 22, 1978, the Minnesota Commission approved the proposed increased rates, and in October 1978 the attorney general brought this action on behalf of the Minnesota residents affected by the rate increase to recover the increased amounts charged them prior to the commission's approval. The state's motion for summary judgment was based on these facts, the quoted statu-

tory provisions, and an affidavit from the director of the Department of Public Service stating that the Minnesota Public Service Commission has never issued an order binding the commission to authorize rates approved by the North Dakota Commission as applicable to Minnesota residents. It is obvious from this showing that if the rates charged for services furnished Minnesota subscribers through the North Dakota exchanges are subject to regulation under Minn.Stat. ch. 237 (1980), the company violated sections 237.07 and 237.075 and the unauthorized increases were illegally collected.

■ The company argues, however, that Minn.Stat. ch. 237 governs only "intrastate" rates, for which it cites sections 237.06, which refers to the "intrastate use" of a telephone company's services and facilities, and section 237.09 which prohibits discrimination in rates charged customers "for any intrastate service rendered or to be rendered." It also cites section 237.10 which imposes on the Department of Public Service the duty to prescribe uniform rules and classifications pertaining to the conduct of "intrastate telephone business." The company points out that this court has referred to the commission's authority over "intrastate telephone rates" and "intrastate rates of telephone companies." *State v. Tri-State Telephone & Telegraph Co.*, 204 Minn. 516, 520, 284 N.W. 294, 299 (1939); *Lenihan v. Tri-State Telephone & Telegraph Co.*, 208 Minn. 172, 178, 293 N.W. 601, 604 (1940). Neither the statutory provisions nor the cited decisions directly addressed the scope of the commission's jurisdiction to determine rates for the Minnesota residents served through out-of-state exchanges, however, and we are convinced that the language found in these statutes and decisions was not intended to restrict the commission's jurisdiction over such rates. The definition of telephone company found in section 237.01 clearly suggests that the rates charged Minnesota subscribers who receive telephone service through the out-of-state exchanges are within the commission's jurisdiction. That provision states: "The term 'telephone company,' as used in this chapter, means and applies to any person, firm, association or any corporation, private or municipal, owning or operating any telephone line or telephone exchange for hire, wholly or partly within this state, or furnishing any telephone service to the public."

■ The most reasonable construction of section 237.01 is that it brings within the scope of Minn.Stat. ch. 237 (1980) any telephone company furnishing telephone service to the residents of the state, whether such service is furnished from an exchange located within or without the state. Consideration of the conditions leading to regulation of the industry, set forth in *State v. Tri-State Telephone & Telegraph Co.*, and of the purposes of the statutes—to insure that telephone companies furnish reasonably adequate service and facilities to the public and that their charges, while permitting a reasonable return, are fair and reasonable—supports this construction of section 237.01. To narrow the commission's jurisdiction to the regulation only of rates for service emanating from exchanges located within the state would in effect deny a significant number of Minnesota citizens the protections Minn.Stat. ch. 237 (1980) was enacted to afford them. We are satisfied that the legislature did not intend the quality of telephone service furnished such residents, and the charges they were to pay, to be dependent upon the judgment of an out-of-state regulatory agency which conceivably could apply quite different standards from those of this state's commission without having jurisdiction over the rates charged Minnesota residents. We conclude that the company's reliance on use of the word "intrastate" is unjustified and that the word was probably used in recognition that the provisions of Minn.Stat. ch. 237 do not have application outside the state, but without limiting the commission's jurisdiction over rates charged Minnesota residents, to whom telephone service is furnished through exchanges located in an adjoining state.

■ The company argues also that because the services furnished through North

Dakota exchanges have the character of interstate commerce, they are not within the ambit of Minn.Stat. ch. 237 (1980). *See Western Union Telegraph Co. v. Speight*, 254 U.S. 17 (1920); *Komatz Construction, Inc. v. Western Union Telegraph Co.*, 290 Minn. 129, 186 N.W.2d 691 *cert. denied*, 404 U.S. 856 (1971). In the Communications Act of 1934, however, Congress expressly provided for state regulation of interstate local telephone exchanges. 47 U.S.C. § 221(b) (1976); *Puerto Rico Telephone Co. v. F. C. C.*, 553 F.2d 694 (1st Cir. 1977); *General Telephone Co. of the Southwest v. Robinson*, 132 F.Supp. 39 (E.D.Ark.1955); *Southwestern Bell Telephone Co. v. United States*, 45 F.Supp. 403 (W.D.Mo.1942).

We also find unpersuasive the company's contention that evidence of the Minnesota Commission's practice over many years of accepting the rates determined by the North Dakota Commission constitutes a longstanding administrative interpretation that Minn.Stat. ch. 237 (1980) applies only to services from exchanges located within Minnesota. The affidavits and correspondence on which the company relies do not constitute a settled construction of the statue, and only one letter, written by a secretary of the commission in 1933, implied that the commission could not exercise jurisdiction over the rates charged Minnesota residents furnished service through North Dakota exchanges. His conclusion had been based on the premise that the services were interstate commerce and therefore could not be the subject of state regulation, a view superseded by the federal statute passed in 1934. The commission at no time issued a formal regulation or order defining its jurisdiction, and even if it had done so, administrative interpretations must be rejected if they contravene plain statutory language. *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971). In spite of the commission's prior concurrence in the company's application of rates approved by the North Dakota Commission to Minnesota subscribers as soon as they became effective for North Dakota subscribers, that action is clearly prohibited by sections 237.07 and 237.075. Thus, the charges made were unlawful regardless of past practices. Although the company argues that it is inequitable to abandon these practices, we are required to conclude that practices of past commissions which perhaps had a mistaken understanding of their jurisdiction, or were willing to accept rates approved by the North Dakota Commission without independent investigation, cannot narrow the jurisdiction of the present and future commissioners.

The company next urges that the present action is barred because the state did not appeal from the order issued May 22, 1978. The company relies on Minn.Stat. § 237.25 (1980), which provides in part: "Any party to a proceeding before the department [of Public Service] or the attorney general may make and perfect an appeal from such order [any order of the Commission under the provisions of ch. 237] as provided in sections 216.24 and 216.25." [1] The company also relies on section 237.26, which provides: "If no appeal is taken from any order of the department, as above provided, then in all litigation thereafter arising between the state and any telephone company or between private parties and any telephone company, the order shall be deemed final and conclusive."

It is obvious, however, that this action for restitution in no way challenged the order of May 22, 1978. That order did not purport to approve the rates charged prior to its issuance, and the state has not contested the reasonableness of the order with respect to future rates. Its action is grounded on the illegality of the rates charged prior to May 22, 1978, so these statutory provisions are inapplicable.

The company contends also that Minn.Stat. § 237.27 (1980) did not permit the attorney general to bring an action seeking the refunds. That statute does not

---

1. Minn.Stat. § 216.24 (1980) provides that any party to a proceeding before the Department of Public Service, any party affected by an order thereof, or the state, by the attorney general, may appeal therefrom within 30 days after service of a copy of the order on the parties of record.

specifically provide that he may bring an action seeking restitution of illegally charged rates, but we find nothing in this section or in the balance of Minn.Stat. ch. 237 (1980) which is an impediment to his action. *Cf. Northwestern Bell Telephone Co. v. State*, 299 Minn. 1, 216 N.W.2d 841 (1974) (statute does not prohibit authorization of refund). It is settled that by virtue of his office the attorney general "may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights." *State ex rel. Young v. Robinson*, 101 Minn. 277, 288–289, 112 N.W. 269, 272 (1907).

The company's final claim is that the refund period should terminate May 8, 1978, rather than May 22, 1978, because the new rates were effective 90 days after their filing on February 8. Section 237.075, subdivision 1 specifically provides, however, that a notice of a proposed rate change shall state "the time when the modified rates will go into effect," and the company did not comply with that requirement. Thus it was not authorized by section 237.-075 to increase the rates 90 days after it filed the increased rates.

Affirmed.