**Lucien SHERROD, individually and as Administrator of the Estate of Ronald Sherrod, deceased, Plaintiff,**

v.

**Willie BERRY, Fred Breen and the City of Joliet, Defendants.**

No. 80 C 4117.

United States District Court,
N.D. Illinois, E.D.

June 15, 1984.

Andrew J. Horwitz and Douglas Rallo, Chicago, Ill., for plaintiff.

William W. Kurnik, William C. Barasha, Kurnik & Cipolla, Arlington Heights, Ill., for defendants.

## Memorandum

LEIGHTON, District Judge.

This civil rights suit, in which the lawyers have been hurling litigation venom at each other, has digressed to a motion by the plaintiff asking this court to disqualify the law firm that now represents the defendants. It is alleged that one defendant is a police officer who shot and killed plaintiff's son; another is the chief of police who was the officer's superior; and the third is the Illinois municipality, employer of the other defendants. Plaintiff argues that the same lawyers cannot represent the three defendants because there are inherent conflicts of interest among them.

Defendants oppose plaintiff's motion, arguing that what potential conflict of interest may exist has been explained to each defendant and they have waived their right to being represented by separate counsel. Further, defendants contend that there are, in fact, no conflicts of interest among them because they are asserting a common defense against plaintiff's claims; and that, in any event, the municipality has an ordinance which requires it to indemnify a police officer who suffers a judgment for an act committed in the discharge of official duties. Therefore, defendants insist that the same lawyers can represent all of them. Having heard the parties and considered the applicable principles of law, the court agrees with defendants; it decides that plaintiff's motion must be denied. This memorandum is extended to include a statement of the facts of this controversy, necessary to understanding the reasons for this court's decision.

## I

On Saturday, December 9, 1979 in the City of Joliet, Illinois, Willie Berry, a policeman, shot and killed Ronald Sherrod, the plaintiff's nineteen-year-old son. Sherrod was unarmed; and when his body was examined, the only item found in his shirt pocket was a driver's license. No weapon of any kind was either on Sherrod or on the person of Gary Duckworth, a passenger in the Sherrod vehicle at the time of the killing. Because of these circumstances and others that were later disclosed, plaintiff and members of his family demanded of Fred Breen, Joliet's police chief, that he investigate Ronald Sherrod's killing and see that Berry be disciplined. Breen, after conducting what he said was an adequate investigation of the incident, refused to institute any disciplinary proceedings against Berry. As a result, Lucien Sherrod filed a complaint before the Board of Fire and Police Commissioners of the City of Joliet.

In the hearing that followed, evidence in support of the charges against Berry was presented by Nicholas E. Sakellariou, the corporation counsel of the City of Joliet. Berry was represented by a lawyer of his choice; Sakellariou waived an opening statement after being invited to make one by the hearing officer; he did not call witnesses who were available; and he declined making any closing argument, even though he was invited to do so by the Board. The charges were dismissed; and on August 5, 1980, this suit asserting claims under 42 U.S.C. § 1983 in three counts, was filed against Berry and the City of Joliet, alleging that when Ronald Sherrod was killed, the actions of Berry, together with the policies and customs of the City of Joliet, deprived him of rights secured by the constitution and laws of the United States.

When counsel appeared for the defendants, it was Nicholas E. Sakellariou, the same lawyer who presented evidence against Berry when Joliet's Board of Fire and Police Commissioners heard Lucien Sherrod's complaint against him. Later, the original complaint was amended adding Fred Breen, the Joliet police chief, as a defendant on allegations that his failure to adequately train and supervise Berry was an unconstitutional force in the killing of Ronald Sherrod. The answer Sakellariou

filed for Berry admitted he was a City of Joliet police officer when he shot Sherrod, denied the police conduct involved was illegal or unconstitutional; and pled affirmatively that Berry, at the time in question, "acted in good faith and reasonably believed that his actions or omissions were constitutional." In the answers to the amended complaints, Sakellariou retained Berry's claim that at the time he killed Sherrod, he acted in good faith and reasonable belief that his acts were constitutional. The answers filed for Breen and the City of Joliet were consistent with Berry's admission that on December 9, 1979, he was a Joliet policeman, his denials and his defense of good faith and reasonable belief. In later stages of pretrial proceedings, Sakellariou was joined in the defense of the case by two of his assistants, Robert Lorz and Thomas A. Thanas, who, because Sakellariou's staff was relatively small, knew of the Sherrod killing and the presentation of evidence against Berry by Sakellariou before the Board. This cause came for trial before a jury on January 23, 1984.

In presenting his case, plaintiff called as adverse witnesses Willie Berry and Fred Breen. Both testified that Berry was acting as a Joliet policeman when he shot and killed Ronald Sherrod; and both insisted that Berry had been properly trained as a city policeman; and that, at the time in question, he was discharging his duties consistent with the policies and customs of the City of Joliet Police Department. Berry, as well as Breen, admitted a number of alleged police brutality incidents in which citizens claimed they were the victims of police misconduct. Breen testified to the same incidents; and while denying they were constitutional deprivations, admitted that some of the incidents had actually occurred, as claimed by the plaintiff. Breen as well as Berry denied that the City of Joliet Police Department had a policy of not training police officers and subborning acts of police brutalities, including the conduct of Berry.

One of plaintiff's claims was that the City of Joliet, and its police department, had a long-standing policy and custom of condoning acts of policemen that either injured or killed Joliet citizens. He had insisted, and his counsel argued, that actions concerning police brutalities by Breen were, to use a colloquialism, "whitewashes," through investigations that were not conducted in good faith. Somewhat unexpectedly during a discussion of the issue outside the presence of the jury, Robert Lorz stated that in Joliet there were two ways in which a police officer was brought before the Board of Fire and Police Commissioners of the city: (1) where the chief of police filed charges; or (2) where a private citizen did so in accordance with rules of the Board. Lorz said that when the chief filed charges against a police officer, the corporation counsel acted as a prosecutor and advocated particular disciplinary action by the Board; but when a citizen filed a complaint charging a police officer with brutality, the corporation counsel merely presented the matter and left the Board to decide the matter as it saw fit. The transcript of the proceedings in Lucien Sherrod's complaint shows that Sakellariou acted as Lorz described was the policy of the corporation counsel's office.

Upon hearing Lorz' statement, plaintiff's counsel insisted on calling him and Sakellariou as witnesses before jury in order to prove that Board proceedings were, ordinarily, part of the "whitewash" in which the City of Joliet engaged when citizens complained of police brutality. The issue, however, was resolved by this court ruling that the transcript of the Sherrod proceedings before the Board was admissible as evidence of admissions by defendants; and that Lorz' statement concerning Joliet's policy through its corporation counsel's office could be read to the jury as containing an admission made by a lawyer for an opposing party in this case.

The trial proceeded; and after all the evidence had been heard, but before deliberation, it was announced by defense counsel that Berry's qualified good faith immunity defense was being withdrawn. The case was submitted to the jury; however, it could not reach a verdict. A mistrial was

declared. In a colloquy with counsel concerning the date for retrial, plaintiff through his lawyers served notice on Sakellariou and Lorz that they were to expect being called as witnesses in the case. Four days later, all of the defendants' counsel moved for and were granted leave to withdraw their appearances. Thereupon, William Kurnik and William Barasha of Kurnik & Cipolla, members of the bar of this court, filed their appearances as counsel for the three defendants. These are the lawyers whom plaintiff seeks to disqualify.

## II

Despite plaintiff's insistence that these lawyers should not be permitted to represent any of the defendants, he does not allege any conduct by them that causes the potential conflicts of interest he says requires their disqualification in this case. In fact, plaintiff assures the court that he is not accusing Kurnik and Barasha of any breach of ethics or wrongdoing in connection with these proceedings. Plaintiff relies entirely on the factual background of the case; particularly, the conduct of Sakellariou, which he says adversely affected his rights in the trial that ended with the jury unable to agree on a verdict. He rests the disqualification of the two lawyers on the nature of his claim against defendants: the fact that he has a Section 1983 suit against a police officer who unconstitutionally took the life of his son; and the fact that joined as co-defendants are the police chief and the municipality that employs the other two defendants.

Plaintiff argues that there are inherent and potential conflicts of interest among defendants relating to matters of trial strategies, assertable defenses, and confidentiality of client communications which would force attorneys representing them jointly to make choices necessarily adverse to one or other of them. Plaintiff claims that this situation would create a real possibility for infusing the record of this case with potential reversible error regardless of other considerations. Therefore, he insists that allowing Kurnik and Barasha to represent any of the defendants would create the opportunity for them to argue on appeal, in case of a judgment against any of them, that this was a result of the conflicts perceived by the plaintiff. And as he sees it, defendants can assert that any judgment against them was a consequence of the lawyers jointly representing them not being able to advise them independent of each other, a situation which defendants can claim they were unable to cope with because they did not have individual representation.

To buttress his contentions and arguments, plaintiff cites the Disciplinary Rules and Ethical Considerations of the ABA Code of Professional Responsibility and cases which have interpreted and applied them. Thus supported, plaintiff urges this court to disqualify Kurnik and Barasha, not only because of the conflicts of interest he describes, but in order that these proceedings do not contenance even an appearance of impropriety by the lawyers. He asks the court not to accept the representations of the two lawyers that they have discussed the matter with their clients; and that this court overlook as inconsequential the fact that the City of Joliet has undertaken by ordinance to indemnify its police officers against judgments they may suffer as a consequence of acts committed in the discharge of their official duties.

## III

It is true, as plaintiff argues, that this court has broad discretion in determining whether an attorney should be disqualified; and that it has the responsibility of maintaining public confidence in the legal profession. This means the court can disqualify an attorney not only for acting improperly but also for failing to avoid the appearance of impropriety. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976); *see Gas-A-Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322 (9th Cir.1976), *cert. denied* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). In making determinations of this kind, any doubt is to be resolved in favor of disquali-

fication, a result that need not be based on an attorney's improper acts, but may be premised on avoiding the appearance of impropriety and on preserving the highest ethical standards of the legal profession. *United States v. Tocco,* 575 F.Supp. 100, 102 (N.D.Ill.1983); see ABA Code of Professional Responsibility, Canons 4, 5, EC5–15, DR5–105.

■ There are, however, countervailing considerations. A court should bear in mind that "a party to litigation has an important interest in enjoying the services of counsel of its choice, and the prophylactic rule [of disqualification] ought not be applied so indiscriminately as to undercut this interest without justification." *Moritz v. Medical Protective Co., Etc.,* 428 F.Supp. 865, 874 (W.D.Wis.1977). Further, it should be noticed that the trend in the decided cases is now away from disqualification based solely on an appearance of impropriety; it is toward disqualification only when continued representation will taint the underlying trial, especially where, as in this case, the appearance of impropriety is not clear. *Bd. of Ed. of N.Y. City v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979). As the court of appeals for this circuit has said on a number of recent occasions, "[d]isqualification of counsel ... is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982); *Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir.1983). For these, and other reasons, applicability of the rule disqualifying an attorney depends on the facts of the case. *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir. 1979).

■ Turning, then, to those in the record before it, this court observes that neither Kurnik nor Barasha has engaged in any conduct that has the appearance of impropriety, either as to any defendant or as to the peculiar facts of this case. They are not in the situation which the first trial disclosed concerning Sakellariou: that when plaintiff charged Berry with police brutality, it was Sakellariou who presented evidence before the Board of Fire and Police Commissioners on which Berry could have been found guilty, while in this court Sakellariou presented evidence on which he urged the jury to find Berry not guilty of the same acts that led to Sherrod's charges. Plainly, this was lawyer conduct that tends to undermine public confidence in the legal profession; it created an appearance of impropriety, the kind which jurors quickly detect and find reprehensible.

Sakellariou and his two assistants have, on their own motion, withdrawn as counsel for defendants; Kurnik and Barasha now appear to represent all of them. Plaintiff contends this joint representation should not be allowed because of potential and possible conflicts of interest that exist among the defendants. There are two practical answers to this contention.

First, the fact that the two lawyers are representing all the defendants does not make their joint representation improper where there is no showing of actual conflicts of interest. *Aetna Cas. & Sur. Co. v. United States,* 570 F.2d 1197, 1201 (4th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). It is recognized, as was said in *Kerry Coal Co. v. United Mine Wkrs. of America,* 470 F.Supp. 1032, 1036 (W.D.Pa.1979), that

> [n]early every case, criminal or civil, which involves more than one defendant presents the opportunity to each defendant to attempt to exculpate himself from liability or guilt by blaming any wrongdoing on the other defendant. But even where this possibility is especially apparent because of the differing circumstances of the defendants' involvement, courts have not necessarily held joint representation improper.

In this case, there is no actual conflict of interest among defendants. Berry admits he was exercising state power as a City of Joliet policeman when he shot and killed

**438**

plaintiff's son; Breen, his superior, makes the same admission; the City of Joliet admits Berry was acting as a police officer when the alleged unconstitutional acts were committed. Defendants are bound by their answers and admissions in this case; they say in opposing plaintiff's motion to disqualify that they intend to continue asserting the common defense they have asserted against plaintiff's claims against them. The potential and possible conflicts of interest described by the plaintiff are, in the main, his speculations.

Second, the City of Joliet has an ordinance, adopted in 1976, which provides it will "hold harmless all officers and employees of the City of Joliet for liability for acts committed within their official capacity and within the scope of their employment for the City of Joliet." The city admits that Berry and Breen, on the occasions in question, were acting within their official capacities and within the scope of their employment as city policemen; therefore, it stands to indemnify Berry and Breen in the event plaintiff procures a judgment against them as a result of the new trial. The record would present potential conflicts of interest among defendants only if the city were unwilling to be legally bound and indemnify Berry and Breen. *Bell v. City of Milwaukee*, 536 F.Supp. 462, 477 (E.D.Wis. 1982); *cf. Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1201 (4th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).

Plaintiff's reliance on *Shadid v. Jackson*, 521 F.Supp. 87 (E.D.Tex.1981) is misplaced. That was a case in which the municipality had not admitted the accused police officer was in the discharge of official duties when the alleged misconduct occurred; and there was no provision for indemnifying the officer. These are the reasons which have led this court to deny plaintiff's motion to disqualify Kurnik and Barasha from representing the defendants in this case. An appropriate order will be entered.

So ordered.