Attorney General Hubert H. HUM-
PHREY, III, Attorney General of the
State of Minnesota, on Behalf of the
STATE of Minnesota and the Public Em-
ployees Retirement Fund, Respondent,

v.

C. Michael McLAREN, defendant and
third party plaintiff, Petitioner,

Morris J. Anderson, et al., Third
Party Defendants.

No. C4–86–1150.

Supreme Court of Minnesota.

May 29, 1987.

Theodore J. Collins, John R. Schulz, St. Paul, for petitioner.

Mark B. Levinger, Sp. Asst. Atty. Gen., St. Paul, for respondent.

SIMONETT, Justice.

The trial court denied defendant's motion to disqualify the entire legal staff of the attorney general's office as counsel for plaintiff in this case. The court of appeals granted defendant's petition for discretionary review and certified the matter to us for accelerated consideration. We affirm the trial court.

Attorney General Humphrey, as the named plaintiff and on behalf of the State of Minnesota and the Public Employees Retirement Fund (PERA), brings this lawsuit against defendant C. Michael McLaren,

former executive director of PERA.[1] Plaintiff's complaint seeks recovery from defendant of public funds allegedly improperly paid to defendant during his tenure as director for severance pay and reimbursement of educational expenses, for expenses of a fishing trip and relocation expenses, and for the value of free-flight coupons. Defendant's answer alleges the payments were approved by the PERA Board of Trustees and that the suit is politically motivated. In addition, defendant counterclaims for other payments due him and for damages for defamation and infliction of emotional distress.

After issue was joined, defendant McLaren moved to disqualify Attorney General Humphrey or any member of his office from representing the plaintiff and further moved for an order requiring the attorney general, pursuant to Minn.Stat. § 481.09 (1986), to show proof of authority to appear as counsel. It is the trial court's denial of these motions that is now before us.

Public employees of the various political subdivisions in this state are members of and contributors to the Public Employees Retirement Association. Management of the association and its pension fund is vested in a board of nine trustees. Minn.Stat. § 353.03 (1986). An executive director, appointed by the board, acts as secretary and advisor to the board and is designated the administrative head of the association. Minn.Stat. § 353.03, subd. 3(a) (1986). From late 1979 through September 30, 1984, defendant McLaren was the executive director. By statute, the attorney general is the legal advisor to the board of trustees. Minn.Stat. § 353.08 (1986). During McLaren's tenure, Special Assistant Attorney General Jon Murphy was legal advisor to the PERA, and he continues today in that role.

After McLaren announced in August 1984 that he was resigning to accept a position elsewhere, the Minnesota Senate Committee on Governmental Operations and the legislative auditor examined expenditures by the PERA under McLaren's administration. Both examiners issued reports questioning certain payments made to McLaren. The senate committee recommended that the attorney general consider proceedings to recover these sums. The attorney general assigned Special Assistant Attorney General Mark B. Levinger to make an investigation. Levinger had never represented the PERA. Levinger is from the Solicitor General's division, while Murphy, the regular PERA attorney, is in the Department of Agriculture division, and the two attorneys report to different supervisors. Levinger is representing the plaintiff in this litigation and Murphy is taking no part.

Based on the recommendations of the senate committee and the legislative auditor and on his own investigation, the attorney general determined that the McLaren payments were improper and recovery should be attempted. Meanwhile, in April 1985, the legislature made major changes in the structure of the PERA. The terms of the existing trustees were ended, and the interim director was given the temporary powers of the board of trustees and of the executive director. *See* Act of April 10, 1985, ch. 11, 1985 Minn.Laws 17. On April 22, 1985, interim director Allen Eldridge signed a letter, drafted by attorney Levinger, requesting the attorney general to collect the McLaren payments.

Defendant McLaren contends that if attorney Murphy were to handle this litigation, he would be disqualified from acting as counsel, both because he would have a conflict of interest and because he will be a necessary witness at trial. (Defendant also claims several other members of the attorney general's office are necessary witnesses.) From this premise, McLaren argues that Murphy's disqualification must be im-

---

1. Chapter 353 refers to the Public Employees Retirement *Association* and its Board of Trustees. It provides that "[t]he board may sue * * * in the name of the board of trustees of the public employees retirement association," Minn. Stat. § 353.08 (1986). Hence, this opinion will use the acronym PERA. The attorney general's complaint, however, says the lawsuit is brought on behalf of the "Fund."

puted to the firm of attorneys of which he is a member, namely the attorney general's staff. The attorney general, on the other hand, denies attorney Murphy would be personally disqualified to represent the plaintiff, but even if he were, his disqualification is not imputable to the entire staff. Although not separately stated as an issue in his brief, McLaren also contends the attorney general lacks authority to represent the state and the PERA in this lawsuit.

## I.

■ Defendant-appellant argues that the attorney general lacks authority to bring this lawsuit because the action has never been authorized by the PERA Board of Trustees. Defendant argues the attorney general cannot bring an action on behalf of a board that does not want action taken on its behalf and that to caption the lawsuit as being brought on behalf of a "fund" rather than the association or its board (*see* footnote 1, *supra*) is a subterfuge to legitimize an unauthorized lawsuit.

Minn.Stat. § 8.01 (1986) gives the attorney general broad authority to represent the state in lawsuits. It provides in part:

The attorney general shall appear for the state in all causes in the supreme and federal courts wherein the state is directly interested; also in all civil cases of like nature in all other courts of the state whenever, in the attorney general's opinion, the interests of the state require it.

*See also* Minn.Stat. § 3.975 (1986) (imposes on the attorney general, after receiving a report from the legislative auditor, the duty to institute such civil proceedings as are appropriate against delinquent employees "to secure to the state the recovery of any funds"). In addition,

As the chief law officer of the state, the attorney general possesses all of the powers inherent in that office at common law. * * * The attorney general may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of this state, the preservation of order, and the protection of legal right.

*Head v. Special School District No. 1,* 288 Minn. 496, 503, 182 N.W.2d 887, 892 (1970); *see State v. Northwestern Bell Telephone Co.,* 304 N.W.2d 872, 877 (Minn.1981).

We conclude the attorney general has ample authority to bring this action on behalf of the PERA and the fund it administers. While plaintiff argues that no PERA board has authorized this lawsuit, the fact is that interim director Eldridge, *acting with full powers of the board,* did request in writing that the attorney general, as the board's statutory legal adviser, seek reimbursement of the McLaren payments. *See* Act of April 10, 1985, ch. 11, § 12, 1985 Minn.Laws 17, 25 (giving interim director full powers of the board of trustees until a new board is appointed).

## II.

Is there a conflict of interest between a lawyer on the attorney general's staff and defendant McLaren that should disqualify the attorney general's staff? We do not think so.

Minn.R.Prof.Conduct 1.10 provides:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

Defendant McLaren claims that if Special Assistant Attorney General Jon Murphy had been practicing alone he would be barred from representing the plaintiff in this lawsuit because of a conflict of interest based on Minn.R.Prof.Conduct 1.9.[2]

---

2. Minn.R.Prof.Conduct 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 [Confidentiality of Information] would permit with respect to a

Disqualification of the entire attorney general's office is appropriate if: (1) McLaren is a former client of Special Assistant Attorney Jon Murphy; (2) Murphy's former representation of McLaren involved matters substantially related to the current lawsuit, or confidential information given to Murphy could be used to McLaren's disadvantage; and (3) the attorney general's office is a "firm" under Rule 1.10. The first and third requirements are at issue here.

The problem with defendant's argument is McLaren has never been Murphy's client. Murphy's client has always been the PERA, *i.e.*, the association and its board of trustees. Minn.Stat. § 353.08 ("The attorney general shall be the legal adviser of the board of trustees."). The bill for Murphy's legal services is sent to and paid by the PERA.

Minn.R.Prof.Conduct 1.13(a) provides: "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." If, for example, the lawyer knows an officer or employee of the organization is violating his legal responsibilities to the organization, the lawyer shall then act "in the best interest of the organization." Minn.R.Prof.Conduct Rule 1.13(b). If there is misconduct by the head of a government bureau, the Comment to Rule 1.13 says, "[E]ither the department of which the bureau is a part or the government as a whole may be the client for purpose of this Rule."

Ordinarily, an attorney representing a corporation or other organization has no conflict of interest in representing the corporation against an officer or employee on a corporate matter. The attorney's allegiance is to the organization. An organization's employee has, of course, a personal stake in his or her job, but in conferring with the organization's attorney in the performance of that job, the matters conferred on are the legal business of the client organization. Whatever information about the organization the officer or employee may client or when the information has become

disclose to the organization's attorney would be information the organization is entitled to know. *See Bobbitt v. Victorian House, Inc.*, 545 F.Supp. 1124, 1126 (N.D. Ill.1982); *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220 (S.D.N.Y. 1982). Here, for example, McLaren says he met frequently with attorney Murphy and shared confidential information on PERA matters. Undoubtedly, he did. The executive director of the association would be expected to have a close working relationship with the attorney representing the association and its board. But any PERA matters discussed in those consultations would not be confidences communicated to Murphy as McLaren's personal attorney to be kept from the PERA board; rather, they would be matters of which the board would be entitled to be apprised. Consequently, disclosure of those discussions does not create a conflict of interest.

In his brief McLaren says he received personal advice from Murphy. He cites no instances. In *National Texture Corp. v. Hymes*, 282 N.W.2d 890 (Minn.1979), the corporation's president had consulted with the corporation's attorney about a patent to be applied for in his own name. We held this gave rise to an attorney-personal client relationship which disqualified the corporation's attorney and law firm from representing the corporation in a subsequent suit against the former president over the patent rights. Similarly, in *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371 (S.D.Tex. 1969), there were circumstances under which the court found that it was reasonable and natural for a vice president to assume that corporate counsel, who assisted him at certain hearings, was representing him personally. Here, however, in the three affidavits submitted by McLaren, there is no showing that McLaren ever dealt with Murphy under circumstances which might reasonably have led McLaren to believe that Murphy was representing him personally and from which a personal attorney-client relationship might be inferred.

generally known.

■ McLaren alleges he requested and received the so-called improper reimbursement payments from PERA in reliance on attorney Murphy's advice. McLaren claims that Murphy had advised the board that the PERA was not subject to state expense guidelines but that it could establish its own guidelines or make reimbursement decisions on a case-by-case basis. But this advice given the board does not make McLaren a client of Murphy's. If McLaren can show at trial that he received the payments in reliance on advice given the PERA by the attorney general who now sues to 'get the money back, McLaren may have a defense to the attorney general's lawsuit. But the giving of conflicting advice to a single client does not create an ethical conflict of interest. Two clients are needed for such a conflict.

■ We hold, therefore, that defendant McLaren has failed to show an attorney-client relationship between himself and Special Assistant Attorney General Murphy. Rules 1.9 and 1.10 are, therefore, not involved and may not serve as the basis for disqualification. Consequently, we need not go further to answer whether the attorney general's office is a "law firm" within the meaning of Rule 1.10. (See, however, Part III(B), *infra.*)

### III.

Defendant McLaren next argues that the attorney general's staff is disqualified from acting as counsel in this lawsuit because one or more members of the staff are likely to be necessary witnesses at the trial. Minn.R.Prof.Conduct 3.7 states: "A lawyer shall not act as an advocate at a trial in which the lawyer *or a lawyer in the firm* is likely to be a necessary witness * * * "[3] (emphasis added). In other words, defendant claims allowing any member of the attorney general's office to represent the plaintiff violates the "advocate-witness" rule. We disagree.

### A.

■ To be disqualified, an attorney's testimony must be "necessary." Simply to assert that the attorney will be called as a witness, a too-frequent trial tactic, is not enough. If the evidence sought to be elicited from the attorney-witness can be produced in some other effective way, it may be that the attorney is not necessary as a witness. If the lawyer's testimony is merely cumulative, or quite peripheral, or already contained in a document admissible as an exhibit, ordinarily the lawyer is not a necessary witness and need not recuse as trial counsel. In *State v. Fratzke*, 325 N.W.2d 10 (Minn.1982), for example, we refused to disqualify the county prosecutor when the defense announced it would be calling the prosecutor as its witness to inquire about an interrogation of the defendant at which the prosecutor was present. We observed two other persons were present at the interrogation who could testify and, further, the interrogation had been taped and transcribed.

■ Here defendant claims Attorney General Humphrey, his Chief Deputy, Special Assistant Levinger, and Special Assistant Murphy are all necessary trial witnesses. But neither the attorney general nor his chief deputy have anything to add to the facts and circumstances of this lawsuit. The fact that the Chief Deputy reviewed a few opinions issued by Murphy does not make the Chief Deputy a necessary witness. The motives of the attorney general in bringing this lawsuit (which plaintiff claims are political) would appear to have no relevance to the propriety of the disputed reimbursement items. As to attorney Levinger, he had no connection with

---

**3.** Rule 3.7 goes on to say, "except where:
  (a) the testimony relates to an uncontested issue;
  (b) the testimony relates to the nature and value of legal services rendered in the case;
  (c) disqualification of the lawyer would work substantial hardship on the client; or

  (d) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

the PERA or McLaren until February 1985. In November 1985, a newspaper article appeared about the lawsuit, mentioning the allegations of the complaint and quoting Levinger. If the article incorrectly characterized the lawsuit, as plaintiff claims, plaintiff has not shown that Levinger's testimony is likely needed to make that point. This is a fairly simple lawsuit, and most of the facts needed at trial can be found in the minutes or transcripts of PERA board meetings, in correspondence and memos, or in newspaper articles. Other people who were present at the various meetings or conferences can also testify as to what was said or done.

■ It is unclear, however, if attorney Jon Murphy is a necessary witness. He had conversations with McLaren alone about PERA matters and apparently also about the attorney general's investigation. Murphy might testify about duties he had in reviewing PERA board expenditures. He was present, at least, at one board meeting when the board approved the relocation expense reimbursement and did not object. Even so, the need for his testimony is doubtful, and it is also pertinent that it is not the attorney general who proposes to call Murphy as a witness, but defendant McLaren.[4]

■ Whether or not Murphy is a likely necessary witness lies within the discretion of the trial court. Because we cannot tell if the trial court ruled on Murphy's status in denying the disqualification motion, we go on to the next issue.

### B.

Assuming the trial court found attorney Murphy to be a necessary witness, must his "firm," the entire attorney general's staff, be disqualified from handling this litigation? We think not.

The preamble to the Rules (see also Comment to Rule 1.10) defines a firm as follows:

[A] lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization, and lawyers employed in a legal services organization.

Defendant McLaren argues that a government legal department is an "other organization." The attorney general points out that the final draft of the model rules included "lawyers employed in the legal department of a government agency" in the definition of a law firm, 68 A.B.A.J. (November 1982 pull out supp. at 5–6), but, as the rules were ultimately adopted by the ABA and by this court, the quoted phrase was deleted. Even so, the deletion is unexplained, and the rules and their comments are tantalizingly vague on whether a government legal department is an "organization" which is to be considered a law firm. *See, e.g.,* Minn.R.Prof.Conduct 5.1 (responsibility of partners in a "law firm" to ensure all firm members comply with the Rules applies, according to the Comment, to supervisors of the "legal department of a government agency"). Under the prior canons, it appears that the majority of courts and commentators did not consider the imputed disqualification rule to apply to government legal departments. *See, e.g., State v. Fitzpatrick,* 464 So.2d 1185, 1187 (Fla.1985); ABA Committee on Professional Ethics, Opinion 342 (November 24, 1975). *Contra: Arkansas v. Dean Foods Products Co.,* 605 F.2d 380, 387 n. 10 (8th Cir.1979), *overruled on other grounds, In re Multi-Piece Rim Products Liability Litigation,* 612 F.2d 377 (8th Cir. 1980); *Blair v. Armontrout,* 626 F.Supp. 512 (W.D.Mo.1985).

---

**4.** Our old Code of Professional Responsibility permitted a lawyer or law firm to continue representing a client when *a party other than his client* indicated it would call the lawyer as a witness until it became apparent that the lawyer's testimony could be prejudicial to his client. DR5–102(B) (1984). This provision no longer appears in our new code. Nevertheless, in balancing the "substantial hardship" to a client from disqualifying the client's attorney (see exception (c) to Rule 3.7) against any prejudice that may result from calling the attorney as a witness, we think who will be calling the attorney as a witness is a factor to be considered.

It appears to us that the attorney-client relationship is subtly different for the government attorney. He or she has for a client the public, a client that includes the general populace even though this client assumes its immediate identity through its various governmental agencies. Thus, a government litigator must take positions with the common public good in mind, unlike the private practitioner who seeks vindication of a particular result for a particular client. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 342, at 10 (1975). Then, too, the government attorney, on a salary and with circumscribed statutory duties, does not have the same personal economic incentives as the private attorney who must meet a payroll. *Id.* The Rules recognize the different status of the public attorney. For example, the preamble states that lawyers on an attorney general's staff "may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients." In short, in the public attorney-public client relationship, there is a quality of disinterested interest not usually found in the private sector. Finally, there are the concerns which enter into the equation for the disqualification of any law firm, namely, the cost and disruption in switching trial counsel, which for a government client requires retaining outside counsel, often at greater expense.

■■■■ From the foregoing considerations, it is our view that a government legal department is not a "firm" under Rule 1.10 (conflict of interest). We think, however, for the purposes of Rule 3.7, as it now reads,[5] it should be presumed that the attorney general's staff is a "firm"; provided, however, that the government may rebut this presumption by showing that less than the entire staff should be considered as a "firm" for the purpose of this rule. Relevant rebuttal evidence would include the organizational structure and personnel practices of the government department which places lawyers in the de-

partment in separate functional groupings. *Cf. Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 731–32 (Minn.1983) (where this court, utilizing presumptions, adopted a flexible test for disqualification for a "substantial relationship" between a current and prior client representation). *See also* Note, *Professional Ethics in Government Side-Switching*, 96 Harv.L.Rev. 1914, 1925 (1983) (to be considered are "the department's organizational structure, geographic divisions, and chain of command"). We are not required in this case to discuss whether a similar rebuttable presumption could apply in the private setting to, for example, a multi-state, multi-department law firm.

■■■ In this case, the attorney general's department consists of over 150 attorneys, organized into over 20 different divisions, and at some 10 or more different locations. Attorney Murphy, even if a necessary witness, is in a different division from trial counsel Levinger, reports to a different supervisor, and has offices at a different location. We hold, for the purposes of Rule 3.7, that trial counsel Levinger is not "a lawyer in the firm" of witness attorney Murphy, and that any disqualification of Murphy as a necessary witness is not imputable to Levinger.

Affirmed.

■■■■

---

5. The court has pending before it a petition of the Minnesota State Bar Association to amend Rule

3.7 to eliminate the disqualification of a law firm where a member is a necessary witness.