MINNEAPOLIS POLICE OFFICERS FEDERATION, et al., Respondents (C1–92–126), Appellants (C3–92–354),

v.

CITY OF MINNEAPOLIS, Appellant (C1–92–126), Respondent (C3–92–354).

Nos. C1–92–126, C3–92–354.

Court of Appeals of Minnesota.

July 21, 1992.

Review Denied Sept. 15, 1992.

Frank J. Walz, Caryn S. Glover, Best & Flanagan, Minneapolis, for Minneapolis Police Officers Federation.

Robert J. Alfton, Minneapolis City Atty., Peter W. Ginder, Asst. City Atty., Minneapolis, for City of Minneapolis.

Considered and decided by NORTON, P.J., and LANSING, and DAVIES, JJ.

## OPINION

LANSING, Judge.

This is a consolidated appeal in a dispute between the City of Minneapolis and the Minneapolis Police Officers Federation over legal representation for a police officer who is both a defendant in a 42 U.S.C. § 1983 action and the subject of a police disciplinary action. We reverse the trial court's declaration that the city attorney's

conflict of interest requires separate representation in the section 1983 action, affirm the judgment denying attorney's fees for bringing the declaratory action, and deny attorney's fees on appeal.

## FACTS

William Chaplin is a police sergeant employed by the City of Minneapolis and is a member of the Minneapolis Police Officers Federation. The federation is a nonprofit corporation which acts as the collective bargaining agent for its members in their employment relationship with the city. Chaplin and other officers were assigned to provide security for protection of President George Bush in his September 1990 visit to Minneapolis. During this assignment Chaplin observed a protester, Janine Baker, cross over a barricade into a secured area. Chaplin struck Baker in the chest with a riot baton.

The internal affairs division of the Minneapolis Police Department investigated Chaplin's use of force and recommended no disciplinary action. Police Chief John Laux rejected the recommendation and suspended Chaplin for five days without pay. Pursuant to the labor agreement between the federation and the city, Chaplin appealed the disciplinary action and requested arbitration.

The city attorney's office first became involved in the disciplinary action in August 1991. On August 8 City Attorney Robert Alfton assigned Assistant City Attorney Peter Ginder to represent the city in the disciplinary action. On August 23, 1991, Baker's attorney notified Attorney Ginder that Baker intended to sue Chaplin and the city for injuries allegedly sustained when struck by the baton. Ginder forwarded the letter to Chief Laux and City Attorney Alfton and stopped work on the disciplinary action. City Attorney Alfton referred the disciplinary action against Chaplin to a private firm specializing in labor relations.

In October Baker sued the city and Chaplin individually and in his official capacity. The complaint alleged common law causes of action and constitutional violations un-

der 42 U.S.C. § 1983 (1988). City Attorney Alfton assigned the city and Chaplin's defense to Assistant City Attorney David Gross. Chaplin notified the city by letter that he would not consent to joint representation and requested that the city pay for an attorney he would select.

The city admitted an obligation to defend and indemnify Chaplin under Minn.Stat. § 466.07 (1990) and Article 18 of its labor agreement. The city also admitted that Chaplin was acting in his official capacity and within the scope of his employment in all actions that form the basis for the section 1983 action.

## ISSUES

I. Whether an attorney representing both the city and the police officer in a civil rights action under 42 U.S.C. § 1983 is subject to disqualification for a conflict of interest when the city admits that the officer was acting within his official capacity and is entitled to indemnification for any damages?

II. Whether an attorney representing both the city and a police officer in a section 1983 action is subject to disqualification for a conflict of interest when the city attorney refers a separate disciplinary proceeding against the police officer to outside counsel?

III. Are the police officer and the federation entitled to attorney's fees in bringing the declaratory action or on appeal?

## ANALYSIS

### I

There is an inherent conflict of interest between a city and its police officer when both are defendants in a section 1983 action, and the police officer is sued in the officer's individual capacity. As an entity the city is responsible for any constitutional deprivation that results from official policy or custom. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). To avoid section 1983 liability, the city must show that a police officer's action

is not within the officer's official capacity. A police officer, on the other hand, avoids personal liability by showing that the actions were within the range of official capacity. *Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2nd Cir.1984).

The differing theories of liability and differing defenses adversely align the city and the police officer. *See* Minn. R.Prof. Conduct Rule 1.7 (Conflict of Interest: General Rule). An attorney who undertakes to represent both the city and a police officer in the officer's individual capacity has an actual conflict of interest and is subject to disqualification. *See Dunton,* 729 F.2d at 907; *Shadid v. Jackson,* 521 F.Supp. 87, 88–89 (E.D.Tex.1981).

A limited exception to this disqualifying conflict of interest arises when the city or other governmental unit agrees to indemnify the police officer or other employees. *See Aetna Casualty and Sur. Co. v. United States,* 570 F.2d 1197 (4th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Smith v. City of New York,* 611 F.Supp. 1080 (S.D.N.Y. 1985); *Sherrod v. Berry,* 589 F.Supp. 433 (N.D.Ill.1984); *Bell v. City of Milwaukee,* 536 F.Supp. 462 (E.D.Wis.1982), *aff'd in part, vacated in part, rev'd in part on other grounds,* 746 F.2d 1205 (7th Cir. 1984). The Fourth, Sixth and Seventh Circuits have evaluated the conflict by looking at the alignment of interests in the specific case. *See Coleman v. Smith,* 814 F.2d 1142 (7th Cir.1987); *Gordon v. Norman,* 788 F.2d 1194 (6th Cir.1986); *Aetna,* 570 F.2d 1197.

The majority of federal district and state courts that have considered the issue have also rejected a per se disqualification in favor of a case-by-case determination. *See Coleman v. Borough of East Rochester,* 2 Laws. Man. on Prof. Conduct (ABA/BNA) 165 (E.D.Pa.1986); *Coleman v. Frierson,* 607 F.Supp. 1566 (N.D.Ill.1985); *Smith,* 611 F.Supp. 1080; *Lee v. Hutson,* 600 F.Supp. 957 (N.D.Ga.1984); *Sherrod,* 589 F.Supp. 433; *In re Petition for Review of Opinion 552 of the Advisory Comm. on Professional Ethics,* 102 N.J. 194, 507 A.2d 233 (1986); *Death v. Salem,* 111 A.D.2d 778, 490 N.Y.S.2d 526 (1985).

To come within the limited exception created by indemnification, the city must (1) agree to indemnify the officer, and (2) take legal positions consistent with the officer. *See* C. Wolfram, *Modern Legal Ethics* § 7.3.3 (1986). The city affirmatively admits that Sergeant Chaplin was acting within the scope of employment and in his official capacity, and that under Minn.Stat. § 466.07, the city is required to defend and indemnify Chaplin for damages including punitive damages. The city is bound by these representations. *See O'Riley v. Clampet,* 53 Minn. 539, 541, 55 N.W. 740, 741 (1893); *see also Manganella v. Keyes,* 613 F.Supp. 795, 798–99 (D.Conn.1985); *Sherrod,* 589 F.Supp. at 438. The coincident financial interests substantially reduce the possibility of conflict of interest.

On the current record, we see no divergent legal positions. The section 1983 claim is premised on Chaplin's single and undisputed act of striking Baker with his baton. There is no claimed discrepancy in the parties' proposed testimony, no incompatibility in positions in relation to the opposing party, and no substantially different possibilities of settlement of the claim. For these reasons we see no actual conflict of interest that precludes the assistant city attorney from representing both the city and Chaplin in the section 1983 action.

## II

The police chief's disciplinary action against Chaplin introduces an additional element in the conflict analysis. In the disciplinary action, the interests of the city and Chaplin are clearly adverse. A lawyer is not ethically permitted to represent a client if that representation is directly adverse to another client unless the lawyer reasonably believes that adequate representation is possible, and the client is advised of the conflict and consents to the representation. Minn.R.Prof. Conduct Rule 1.7; *see also United States Fidelity and Guar. Co. v. Louis A. Roser Co.,* 585 F.2d 932, 939 (8th Cir.1978) (it is axiomatic that an attorney cannot represent two clients whose inter-

ests are actually conflicting). Sergeant Chaplin has not consented to the city's representation in the section 1983 action. Lawyers associated in a firm are not ethically permitted to represent a client when any one of them practicing alone would be prohibited from doing so because of a conflict of interest. Minn.R.Prof. Conduct Rule 1.10.

 The city concluded that it would have a disqualifying conflict of interest if the city attorney's office represented the police chief in the disciplinary action and Chaplin in the section 1983 action. Acting on that conclusion, the city attorney referred the disciplinary case to a private law firm specializing in labor relations. Chaplin and the federation view this attempted divestiture as ineffective in resolving the conflict and contend that zealous representation and protection of client confidence can be secured only if Chaplin selects his own attorney. Our analysis does not reach the same conclusion.

The supreme court has determined that the attorney-client relationship for the government attorney is different from that in the private sector. *Humphrey ex rel. State v. McLaren*, 402 N.W.2d 535, 543 (Minn.1987). The public is the government attorney's client, which assumes its immediate identity through various governmental agencies. Therefore, "a government litigator must take positions with the common public good in mind, unlike the private practitioner who seeks vindication of a particular result for a particular client." *Id.* (Citation omitted).

The Minnesota Rules of Professional Conduct recognize the different status of a government attorney. The definition of law "firm" that is used in imputed conflicts does not include an attorney general or city attorney's office. Minn.R.Prof. Conduct Terminology. In addition the introductory comments to the Rules state that lawyers on an attorney general's staff

> may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients.

Minn. R. Prof. Conduct Scope; *McLaren*, 402 N.W.2d at 543.

Other states have permitted the attorney general to concurrently represent conflicting interests so long as the attorney general can insure independent representation for the competing parties. *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Info. Comm'n*, 174 Conn. 308, 387 A.2d 533, 537 (1978); *State v. Klattenhoff*, 71 Haw. 598, 801 P.2d 548, 551 (1990); *Superintendent of Ins. v. Attorney Gen.*, 558 A.2d 1197, 1202–03 (Me. 1989); *Feeney v. Commonwealth*, 373 Mass. 359, 366 N.E.2d 1262, 1266 (1977); *see also Environmental Protection Agency v. Pollution Control Bd.*, 69 Ill.2d 394, 14 Ill.Dec. 245, 248, 372 N.E.2d 50, 53 (1977); *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 868 (Ky.1974); *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n*, 418 So.2d 779, 784 (Miss. 1982); *State ex rel. McLeod v. Snipes*, 266 S.C. 415, 223 S.E.2d 853, 855–56 (1976).

The Minneapolis City Attorney's office is different from a typical attorney general's office in size and centrality of location. Logically the interworkings of the city attorney's office may involve more contact with all city cases than would occur with cases handled by geographically separate attorney general divisions. However, referring the disciplinary action to a completely separate office is more than the functional equivalent of separation resulting from remote location.

Further we must assume that government attorneys will adhere to their ethical obligations. In this case Assistant City Attorney Ginder promptly attempted to divest the office of any conflict by referring Chaplin's disciplinary action to outside counsel. Assistant City Attorney Gross and not Ginder has been assigned to represent the city and Chaplin in the section 1983 action. There is no claim of any client confidences that have been obtained from Chaplin that would negatively affect his position, and we decline to presume that such a violation would occur in the future.

It is unclear whether the result of one proceeding will be admissible in the other.

822

See *Maddox v. City of Los Angeles*, 792
F.2d 1408, 1417 (9th Cir.1986). Even if we
assume admissibility, however, Chaplin will
not suffer economically as a result of the
city taking a position adverse to his be-
cause the city, not Chaplin, is liable for any
damages awarded against him. The prac-
tical outcome, therefore, is no different
than if Chaplin were independently repre-
sented.

 Chaplin is entitled to professional
and energetic representation in the section
1983 action. The city is also entitled to
make choices of representation that maxim-
ize economy, expertise, and efficiency so
long as those decisions do not compromise
effective representation or create imper-
missible conflicts. *See Suffolk County
Patrolman's Ass'n v. County of Suffolk*,
751 F.2d 550, 551 (2nd Cir.1985). Chaplin's
subjective reactions to being represented
by a city attorney when the city, albeit
through a private attorney, is opposing him
in a disciplinary matter may be important
to him. He is free to retain his own attor-
ney if these are important. However, the
city is not required to reimburse him under
the labor agreement or the statute. *See
Adams v. North Range Iron Co.*, 191
Minn. 55, 59, 253 N.W. 3, 5 (1934) (when a
principal employs competent attorneys to
defend an action by a third party against
the agent and the principal, the agent is not
entitled to reimbursement for fees for addi-
tional attorneys hired by the agent to pro-
tect him in the litigation when there were
no antagonistic defenses).

### III

 Chaplin and the federation appeal
the trial court's denial of attorney's fees
for bringing this declaratory judgment ac-
tion. "The general rule is that attorney's
fees are allowed only when authorized by
statute or provided for in the contract."
*Lanoue v. Fireman's Fund Am. Ins. Cos.*,
278 N.W.2d 49, 54 (Minn.1979). In *Morri-
son v. Swenson*, 274 Minn. 127, 137–38, 142
N.W.2d 640, 647 (1966), the court extended
that rule to include litigation fees to en-
force an insurer's duty to defend.

The city has not denied its statutory and
contractual obligation to provide defense
for Chaplin. Chaplin's declaratory judg-
ment action was to obtain defense different
from that provided by the city. Because
we find no actual conflict of interest, we
affirm the trial court's denial of the federa-
tion and Chaplin's motion for attorney's
fees. For the same reason, we deny Chap-
lin and the federation's motion for attor-
ney's fees on appeal. *See Scholle v.
Scholle*, 411 N.W.2d 912, 917 (Minn.App.
1987).

### DECISION

The city's agreement to indemnify the
police officer in the section 1983 action and
its obtaining conflict counsel for the disci-
plinary action remove any actual conflicts
of interest that would prevent an assistant
city attorney from representing both Chap-
lin and the city as defendants in a section
1983 action.

Affirmed in part and reversed in part.