**Jerry Michael GORDON,
Plaintiff-Appellee,**

v.

**Doug NORMAN, Harold Prows, Ken Martin (85–5175), and J. Anderson (85–5186), Defendants-Appellants.**

Nos. 85–5175, 85–5186.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1986.

Decided April 23, 1986.

Louis Hofferbert, Robert H. Watson, Jr., Knoxville, Tenn., for defendants-appellants.

Donald Coffey (argued), Knoxville, Tenn., for plaintiff-appellee.

Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

GUY, Circuit Judge.

Defendants appeal a judgment in favor of plaintiff in a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff alleged deprivation of a liberty interest without due process of law in that defendants used excessive force in effecting his arrest and conspired to prosecute him on false charges. Defendants, all police officers with the Knoxville, Tennessee, Police Department, alleged that plaintiff resisted arrest and that they utilized reasonable force in subduing him.

On July 15, 1983, at approximately 2:00 a.m., a vehicle driven by plaintiff, was pulled over by officers from the Knoxville Police Department, after plaintiff was clocked by a radar unit which indicated that he was speeding. When asked whether he had been drinking, plaintiff told the officers that he had consumed less than two beers earlier in the evening. The officers requested that plaintiff perform field sobriety tests. After performing those tests, defendant Prows requested that plaintiff submit to a breathalyzer test. Upon being advised of the possible sanctions for refusal, plaintiff requested and was allowed a few minutes to think about it. Subsequently, plaintiff refused to submit to the test.

Defendant Prows escorted plaintiff back to his patrol car in order to complete the paperwork concerning the arrest. Plaintiff asked if he could leave the vehicle's door open, with his feet on the ground, claiming that he suffered from claustrophobia. Defendant permitted him to do so.

Plaintiff was then escorted to the paddy wagon for transport to jail. After being allowed a moment to collect himself, plaintiff was told to get into the paddy wagon. When he did not do so, the officers grabbed plaintiff and forced him to get inside the wagon. Plaintiff claimed that during the struggle he was unnecessarily struck in the head with a billy club and that defendants otherwise used excessive force in arresting him. He denied that he scuffled with or kicked at the officers. The defendant officers contended that plaintiff fought them, and that he was subdued with reasonable force.

The case was tried by consent before United States Magistrate Murrian on December 13 and 14, 1984. The jury returned a verdict in favor of plaintiff awarding

$5,000 in compensatory damages, and punitive damages as follows: $45,000 each against defendants Norman and Martin, and $5,000 each against defendants Anderson and Prows. The defendants were represented at trial by the Law Director of the City of Knoxville.

Defendants moved for a new trial on December 21, 1984. The motion was overruled by the magistrate. On February 4, 1985, the magistrate issued an order reaffirming his denial of the motion for a new trial, and *sua sponte* ordering a remittitur of punitive damages against defendants Norman and Martin to $17,500 each. The plaintiff did not object and judgment was entered thereon.

Defendants Norman, Prows, and Martin secured new counsel on appeal and appeal both the judgment, reflecting the accepted remittitur, and the denial of their motion for a new trial. Defendant Anderson appeals separately. The appeals have been consolidated before this court.

## I.

Defendants Norman, Prows, and Martin initially argue that they were deprived of their right to a fair trial and were deprived of due process of law because their attorney, the Law Director of the City of Knoxville, experienced a conflict of interest in representing them.[1] Thus, defendants assert, even though the City of Knoxville was not a party to this action, it was the principal client of their attorney and this prevented him from exercising independent judgment in representing defendants.[2]

Defendants have filed affidavits claiming that their trial counsel, the City of Knoxville's Law Director, told them before trial that he was their lawyer "like it or not;" that he did not subpoena all witnesses that the defendants wanted present for trial; that they were not told when certain depositions were to be taken and were not present; that he never told them that they might be *personally* liable on a judgment for compensatory damages, punitive damages, or attorney fees; that he never told them until after judgment that the City would *not* pay any award of punitive damages; that he did not bring certain juror misconduct to the presiding judicial officer's attention after defendants told him about it; that he told defendant Norman, but not the other two defendants, at lunch on the first day of trial about an offer plaintiff had made the day before to settle for $7,000; that their trial counsel wore "two hats," in that as Law Director he decides which cases the City will settle and that responsibility interfered with his exercise of independent professional judgment on defendants' behalf; that he never told them that they could retain their own law-

---

1. Tenn. Code Ann. § 7–51–202 provides:
   **Employees sued for damages in the course of their employment—Defense counsel—Indemnification—Exceptions—Limits of Liability.**—(a) Whenever any county sheriff and his deputies or any employee member of a fire or police department of a municipal corporation or other political subdivision of the state of Tennessee shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment by such governmental agency, such governmental agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit; provided, however, that such indemnity shall not extend to any judgment for punitive damages or for damages arising out of any willful wrongdoing by the employee and; provided, further, that such municipal corporation or other po-

   litical subdivision shall have notice of such suit.
   (b) Liability on behalf of any municipal corporation or political subdivision affected by §§ 7–51–202, 7–51–203 shall be limited to fifty thousand dollars ($50,000) for each person injured or property damaged for any one (1) accident and one hundred thousand dollars ($100,000) for all injuries and all property damage resulting from any one (1) accident.

2. Defendants also raised this issue in a motion to set aside the judgment under Fed.R.Civ.P. 60 before the magistrate. The magistrate denied the motion, and defendants have not appealed that order. Nevertheless, the issue may be raised here on appeal since defendants' failure to object to multiple representation before or during trial did not constitute a waiver. *See Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir.1984).

yer or lawyers; and that he has now told them that he will not authorize payment of the judgment in this lawsuit.

Defendants rely on *Dunton v. County of Suffolk*, 729 F.2d 903, *modified* 748 F.2d 69 (2d Cir.1984). Dunton sued a county police officer under 42 U.S.C. § 1983 and for battery under state law. The county was also a defendant. The county attorney advised the police officer before trial that there was a possible conflict in his joint representation of Suffolk County and the police officer because punitive damages were sought, but the officer was never informed that the attorney intended to take a stance adverse to the officer's best interests. At trial, the attorney argued that the police officer was acting as an "irate husband" in assaulting the plaintiff, and not as an employee of the county. The court noted the conflict:

> [S]ince the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities can be held liable under section 1983 for employees' actions taken pursuant to municipal policy. After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict. *See Van Ooteghem v. Gray*, 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employer, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a

defense to a section 1983 action. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

729 F.2d at 907. The court found that the county attorney's representation of the officer was inconsistent with the attorney's professional obligation to his client as well as Canons 5 and 9 of the ABA Code of Professional Responsibility. Because the conflict was obvious, the Second Circuit held that the district court had a duty to ensure that the client fully appreciated his situation. Furthermore, since the jury never had a chance to consider the officer's good faith immunity defense, the officer did not receive the fair trial to which he was entitled. Accordingly, the court reversed the judgment against the officer and ordered a new trial. *Id.* at 910.

Thus far, the Second Circuit is the only appellate court to have addressed this issue directly. *But see Van Ooteghem v. Gray*, 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds*, 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982) (serious conflict of interest could exist in future § 1983 actions in which one attorney represents both a county and a county official individually).

In *Coleman v. Frierson*, 607 F.Supp. 1566 (N.D.Ill.1985), defendants moved for relief from a default judgment claiming counsel's representation of them gave rise to a conflict of interest warranting such relief under the rationale of *Dunton*. Judge Shadur concluded there was no clear basis for reading *Dunton* as creating a universal *per se* conflict rule. Rather, the court construed *Dunton* as reasserting "'the need for sensitivity to the risk of conflict throughout the course of a lawsuit involving multiple representation' ... especially in cases—like those proceeding under *Monell*—where the differing interests among clients may not be immediately apparent." *Id.* at 1572 (quoting the court's earlier opinion in *Clay v. Doherty*, 608 F.Supp. 295, 305 (N.D.Ill.1985)). The court indicated that whenever an actual conflict

arises, the judge and the parties have the joint responsibility to guard any threatened interests. *Id.* at 1572. In denying defendant's motion, the court noted that even if the multiple representation created a risk of conflict, no conflict was ever realized. *Id.* at 1573.

Other trial courts have encountered this problem in the context of motions to disqualify. *See, e.g., Clay v. Doherty, supra* ("In the absence of case law mandating a broad reading of *Dunton,* this court views it not as a modification of the governing principles under DR 5–105, but rather as a reassertion of the need for sensitivity to the risk of conflict throughout the course of a lawsuit involving multiple representation"); *Lee v. Hutson,* 600 F.Supp. 957 (N.D.Ga.1984) (multiple representation presenting potential for conflict is permitted if attorney believes adequate representation is possible and all clients consent); *Sherrod v. Berry,* 589 F.Supp. 433 (N.D.Ill. 1984) (joint representation not improper when there is no showing of actual conflict of interest); *Shadid v. Jackson,* 521 F.Supp. 87 (E.D.Tex.1981) (lawyer disqualified from representing both city and its employee in civil rights action due to unfairness inherent in multiple representation of clients with potentially adverse interests).

Defendants have also pointed to *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), holding that a criminal defendant is deprived of due process of law when the defendant's lawyer experiences an actual conflict of interest in such representation. Nevertheless, in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1979), the Supreme Court made it clear that prejudice would be presumed only if the defendant demonstrated that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's

performance. *Id.* at 350, 100 S.Ct. at 1719. In *Wood,* the Court noted that the record appeared to show such prejudice. 450 U.S. at 272, 101 S.Ct. at 1103.

In the instant case, the City of Knoxville was not a party to the action. The parties stipulated that the defendants were acting under color of law at all times as employees of the City of Knoxville. Defendants' good faith immunity defenses were pursued before the jury. Although the magistrate's denial of defendants' motion for relief under Fed.R.Civ.P. 60(b) is not on appeal, his findings are highly revealing since he was the trial judge. He concluded that trial counsel vigorously defended the lawsuit and did not take any positions before the jury that were inconsistent with his clients' interests.

As to defendants' claim that their counsel deliberately failed to inform them of a settlement offer because settlement was not in the City's interests, the magistrate found that trial counsel advised defendant Norman of the offer on the first day of trial, being the day after it was made. Defendant Norman states in his affidavit that his reaction to the settlement was "negative" at that time. Defendant Norman is the senior police officer among the defendants. The other two defendants acknowledge in their affidavits that Norman passed the settlement information along to them. There is no indication that anyone sought or desired to pursue the offer.[3]

In effect, then, defendants have failed to show that they were adversely affected by this purported conflict or that their trial counsel failed to exercise independent judgment depriving these defendants of a fair trial. The other complaints they make regarding their attorney's conduct and effectiveness simply cannot be explained in terms of a conflict between their interests and the City's interests.[4]

---

3. At oral argument, the Knoxville Law Director denied that a true settlement offer had been made. He indicated that although settlement had briefly been discussed, plaintiff had made no actual offer. More significantly, however,

counsel for plaintiff also indicated that no real settlement offer was ever made.

4. We make no comment as to the possible ethical violations by the Law Director or as to potential malpractice liability. The court was

Because defendants have failed to show prejudice, they cannot prevail on this issue.

At the same time, we are aware of the great potential for conflict in this field. For this reason, we agree with *Coleman, supra,* that there is a "need for sensitivity to the risk of conflict" in § 1983 suits, 607 F.Supp. at 1572, and that the judge and the parties have joint responsibility to guard interests that are actually threatened.[5]

## II.

All defendants challenge the court's instruction on punitive damages. They argue that there was no basis for such an instruction, due to plaintiff's failure to introduce testimony regarding the financial condition of the defendants. They submit that under Tennessee law, such evidence is essential before the jury may be charged on punitive damages, citing *Odom v. Gray,* 508 S.W.2d 526 (Tenn.1974), and *Breault v. Friedli,* 610 S.W.2d 134 (Tenn.1980).

The magistrate, addressing defendants' motion for a new trial, initially refused to consider this issue, since defendants made no motion for directed verdict and were therefore precluded from arguing that there was insufficient evidence to submit the issue of punitive damages to the jury. *TCP Industries, Inc. v. Uniroyal, Inc.,* 661 F.2d 542 (6th Cir.1982). Nevertheless, he ultimately concluded that evidence as to the defendants' financial condition was not mandatory, but that plaintiff or defendant had the option of introducing such evidence under Tennessee law. *Odom,* 508 S.W.2d at 534.

■ Punitive damages for deprivation of civil rights may be awarded when the defendant wilfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The allowance of such damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact. *Busche v. Burkee,* 649 F.2d 509, 520 (7th Cir.1981).

■ Federal standards govern the determination of damages under the civil rights statutes. *See* 42 U.S.C. § 1988; *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 238–40, 90 S.Ct. 400, 405–06, 24 L.Ed.2d 386 (1969). Thus, punitive damages may be awarded under § 1983 even where they would not normally be recoverable under the local law in the state where the violation occurred. *Garrick v. City and County of Denver,* 652 F.2d 969, 971 (10th Cir.1981); *see also McDaniel v. Carroll,* 457 F.2d 968 (6th Cir.1972) (state common law may be used on issue of damages where it better serves the policies expressed in the federal statutes). Defendants' assertion that the award of punitive damages should be limited by application of Tennessee law is without merit.[6]

## III.

Defendants Norman, Prows, and Martin also appeal the denial of their motion for new trial based on the excessiveness of the jury verdict. The magistrate reduced the damages against Norman and Martin from $45,000 each to $17,500 each. While noting that there had been no evidence relative to the defendants' financial condition, the

___

informed at oral argument that there is now pending a § 1983 action by these defendants against the county and the law director.

**5.** This is a significant case in a troublesome area. Government attorneys have routinely represented individual defendants as have insurance counsel, post *Monell,* without any thought for the most part as to conflict of interest. The

*bar* should be aware of potential ethical violations and possible malpractice claims.

**6.** We also reject defendants' reading of *Odom,* which case we interpret as *allowing,* not requiring, evidence relative to defendants' financial situation.

magistrate concluded that it was "common knowledge" that police officers "don't make a lot of money;" however, he refused to grant a new trial on the ground that damages were excessive.

■ The decision of a trial judge to deny a motion for new trial should be reversed only on the showing of an abuse of discretion. *Cathey v. Johns-Manville Sales Corp.,* 776 F.2d 1565, 1573 (6th Cir. 1985). Defendants have failed to demonstrate in any manner that the magistrate abused his· discretion in denying their motion for new trial.

### IV.

■ Finally, all defendants challenge the sufficiency of the evidence and allege that the trial judge abused his discretion in not ordering a new trial. Defendants argue that plaintiff's version of the facts was unworthy of belief in that plaintiff had been drinking; he unreasonably refused to take the breathalyzer test; his allegation of having claustrophobia was unbelievable; and the only disinterested witness at trial testified for defendants.

In denying their motion, the trial judge noted that plaintiff's credibility was a matter for the jury. Although the disinterested witness had testified that she did not see the police officers hit the plaintiff, this was refuted by the defendants themselves who contended they did use reasonable force against the plaintiff. The magistrate thus concluded that the witness obviously did not see the entire altercation. Moreover, photographs of plaintiff's injuries supported his version of the facts.

After a careful review of the record, we cannot say that the magistrate abused his discretion in refusing to grant a new trial based on insufficiency of the evidence or that there was insufficient evidence to support the verdict.

Accordingly, the judgment of the district court is AFFIRMED.