872 F.2d 1025
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FORD MOTOR COMPANY, Plaintiff-Appellant,
v.
Edward W. TOTH, et al., Defendants-Appellees.
 No. 88-1051.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1989.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and CHARLES M. ALLEN, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff appeals the order of the district court denying its motion for a new trial on the issue of damages. Because we conclude that the district court did not abuse its discretion by refusing to set aside the jury's verdict on damages, we affirm.
 
 I.
 
 2
 Defendant Edward W. Toth was employed by plaintiff Ford Motor Company for forty-three years, most of which he spent as a buyer of supplies. Toth was authorized to place orders with suppliers up to $300 without soliciting competitive bids. During the course of his employment, Toth maintained a relationship with Charles Zammitt, the president and owner of M.L. Parker Company, a supplier to Ford. Over the years, Zammitt gave Toth one-half ownership in the company's building, paid to have a garage constructed on Toth's property, provided Toth with approximately $400 worth of services and gifts, and paid to have Toth's kitchen remodeled. Toth admitted that in return for all of these gifts and services, he favored Zammitt with as many spot orders (i.e., those below $300 and therefore not subject to competitive bidding) as he could. Toth testified that he placed anywhere from five to twenty-five spot orders each day.
 
 
 3
 As part of his employment contract with Ford, Toth was subject to Ford's C-3 policy setting forth the company's standards of corporate conduct. The policy provides, inter alia, that
 
 
 4
 each salaried employe to whom this portion of the Policy applies, shall report, for information purposes, the details of any of the following financial interests directly or indirectly held at any time or hereafter acquired by such employee, or to the extent known by such employe, by any family member, or by both, in an organization with which the company does business.... (1)(b) Any financial interests in such an organization that is a corporation but that is not publicly owned.
 
 
 5
 Toth admitted that he had a fiduciary duty to Ford, and that he had a duty to refrain from accepting "any commission, gift or gratuity or doing any act beneficial to [himself] or another according to any agreement or understanding between [him] and any other person to the effect that they shall act in a particular manner in relation to their employer's business." Pursuant to Ford's C-3 policy, Toth annually signed a form indicating that he had no financial or other interests to report.
 
 
 6
 Ford filed a complaint in the district court against Toth, Zammitt, and several other defendants on September 5, 1984 alleging, inter alia, that Toth, in conjunction with the other defendants, violated the Robinson Patman Act, 15 U.S.C.A. Sec. 13 (1973), that Toth breached his contract with Ford, violated his fiduciary duty to Ford, and committed common law fraud against Ford. At the close of evidence, the district court granted Ford's motion for directed verdict on the breach of contract claim, the breach of fiduciary duty claim, and the common law fraud claim. The remaining claims against Toth were submitted to the jury as was the issue of damages on the directed verdict claims. The jury subsequently returned a verdict of no cause of action on the other claims against Toth, and found that Ford had suffered $0 in damages as a result of Toth's breach of contract, breach of fiduciary duty, and common law fraud.
 
 
 7
 Ford thereafter filed a motion for new trial pursuant to Fed.R.Civ.P. 59(a) on the ground that, inter alia, the jury's award of damages was against the great weight of the evidence. The district court entered an order denying Ford's motion for a new trial with respect to the claims against Toth. The court held that "the theory underlying Ford's claims against Toth is that Toth's improper relationship with Zammitt resulted in Ford being overcharged for goods supplied by the M.L. Parker Company. A careful review of the evidence, however, leads the court to conclude that Ford failed to introduce evidence regarding the fair market value for those goods. Accordingly, the jury could properly decline to award damages, finding that any such award would be speculative and in contravention of this Court's instructions." Ford now appeals.
 
 II.
 
 8
 This court will reverse "[t]he decision of a trial judge to deny a motion for new trial ... only on the showing of an abuse of discretion." Gordon v. Norman, 788 F.2d 1194, 1200 (6th Cir.1986). Indeed, the "trial court has greater discretion in deciding whether or not to grant a new trial than is present in the directed verdict or judgment notwithstanding the verdict context." Birchfield v. International Harvester Co., 726 F.2d 1131, 1132 n. 1 (6th Cir.1984).
 
 
 9
 Ford raises two arguments in support of its contention that the district court abused its discretion by not granting a new trial on the question of damages:
 
 
 10
 First, Ford argues that the jury's award of $0 in damages is not consistent with the court's directed verdict on liability. Ford argues that proof of injury or damage is an element of both common law fraud and breach of fiduciary duty by an agent under Michigan law. It is true that Michigan courts have generally listed damage as a necessary element of actions for breach of contract, see, e.g., Davis v. Kramer Bros. Freight Lines, 361 Mich. 371, 376 (1960), breach of fiduciary duty, Hammond v. Matthes, 109 Mich.App. 352, 359 (1981), and common law fraud. Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 337 (1976).
 
 
 11
 Nevertheless, Ford's argument that the jury's decision not to award damages was inconsistent with the direction of verdict on liability must be rejected because it ignores the distinction between the elements necessary to support liability and those necessary to support a recovery. For example, in determining that Ford had established Toth's liability for breach of contract, the district court plainly found that a contract existed between Ford and Toth which required Toth to disclose any financial relationship with Ford's suppliers, and that Toth breached that contract by not disclosing his co-ownership of the M.L. Parker building. These facts clearly support a finding of liability; however, in order to be entitled to a recovery, Ford must show that it was damaged by Toth's breach of contract. The district court plainly made no finding with respect to the issue of damages. Thus, the court instructed the jury that "the only issue which you must decide with respect to Plaintiff's claim of breach of contract is the amount of damages, if any, to which Ford is entitled. In determining the amount of damages, if any, you will award to Ford on this claim, I instruct you that Ford is entitled to be compensated for any injury which was proximately caused by Defendant Toth's breach of contract." It is therefore clear that the district court's finding of liability with respect to the breach of contract claim did not entail a finding that Ford was damaged by Toth's breach.
 
 
 12
 An examination of the district court's findings with respect to Ford's breach of fiduciary duty and common law fraud claims requires the same analysis and the same result. With respect to each claim, the court found that Ford had established the elements of liability, but made no finding with respect to damages. As to each, the court instructed the jury to determine the amount of damages, if any, which Ford suffered as a result of Toth's breach of fiduciary duty and his fraud. For this reason, Ford's argument that the jury's failure to award damages was inconsistent with the directed verdict on liability must be rejected.
 
 
 13
 Ford also argues that, viewing the facts in the light most favorable to Toth, no reasonable person could have awarded Ford $0 given what Ford characterizes as the undisputed evidence of at least $69,615.01 in damages. At trial, Ford introduced an exhibit summarizing the billings submitted by M.L. Parker to Ford on ten different purchases approved by Toth. With respect to each, the exhibit lists the amount which M.L. Parker charged Ford, the cost to M.L. Parker plus an allowance for a ten percent markup, and the difference between the amount charged to Ford and the cost plus ten percent markup. Ford argues that the difference between M.L. Parker's cost plus an allowance for a ten percent markup and the amount billed to Ford, $69,615.01, was damages which Ford incurred as a direct result of Toth's breach of contract, breach of fiduciary duty, and common law fraud. Ford argues that if Toth had not maintained his relationship with Zammitt, these excessive billings would never have been approved.
 
 
 14
 We reject this argument, and instead adopt the view taken by the district court. As the court observed, Ford introduced no evidence regarding the fair market value of the goods listed in the exhibit. For this reason, the jury did not have a basis for calculating the amount, if any, by which M.L. Parker's billings to Ford exceeded the amount which Ford would have been charged had it purchased the goods elsewhere.
 
 
 15
 We hold that the jury's award of $0 in damages is not against the clear weight of the evidence, and that the district court did not abuse its discretion in denying Ford's motion for a new trial.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation