**John S. SMITH, Plaintiff,**

v.

**Leroy MARTIN, et al., Defendants.**

**No. 91 C 4257.**

United States District Court,
N.D. Illinois, E.D.

Oct. 21, 1992.

Richard J. Brzeczek, Chicago, IL, for plaintiff.

Kelly R. Welsh and Terence J. Moran, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Defendants have moved for summary judgment against John Smith ("Smith"), who claims a violation of his constitutional rights because he was allegedly punished for speaking out against the deliberate flouting of the Chicago Clean Indoor Air Ordinance by defendants—fellow members of the Chicago Police Department. Smith has responded to that motion on the three issues that this Court identified for the parties in its September 11, 1992 oral directive. Although each side has necessarily occupied substantial space in addressing the issues,[1] no extended discussion is required to deal with defendants' motion, which is denied.[2]

### First Amendment Protection

This Court has had occasion in the past to comment on the remarkable level of serendipity that is associated with the business of federal judging. Once again a current opinion from our Court of Appeals has delivered a timely message applicable to a pending motion—this time it is the thorough treatment in *Churchill v. Waters*, 977 F.2d 1114 (7th Cir.1992) of the same issues that are posed here.

 As to the first and most critical threshold question—whether the inhalation of second-hand smoke is a matter of public concern within the protection of such cases as *Pickering v. Board of Education*, 391 U.S. 563, 568, 574, 88 S.Ct. 1731, 1734–35, 1737–38, 20 L.Ed.2d 811 (1968) and *Connick v. Myers*, 461 U.S. 138, 142–49, 103 S.Ct. 1684, 1687–91, 75 L.Ed.2d 708 (1983)—last week's extended opinion in *Churchill* (see especially 977 F.2d at 1120–21) confirms a resounding "yes" answer. And relatedly, the need to draw all reasonable inferences in Smith's favor on defendants' summary judgment motion precludes the entry of judgment for defendants as a matter of law under this Court's analysis in *Limes–Miller v. City of Chicago*, 773 F.Supp. 1130, 1141–43 (N.D.Ill. 1991).

Like the plaintiffs in *Churchill* and *Limes–Miller*, Smith's involvement in an issue of public concern did grow out of his own personal interest in the subject. After all, who among us ordinarily gets aggressively involved in issues in which he or she has *no* personal interest? But here the asserted retaliation by defendants took place after Smith had sought to bring the matter onto a larger stage by "going public" with it to the Chicago Department of Health and (at that Department's directive) to the Police Department's Legal Affairs Unit. That reasonably fits the public-concern model that this Court distinguished in *Limes–Miller*. It is of course not essential to that conclusion that the public employee's speech must have taken place in a public forum (see, e.g., *Rankin v. McPherson*, 483 U.S. 378, 388–89, 107 S.Ct. 2891, 2899–2900, 97 L.Ed.2d 315 (1987)), although the fact of Smith's having gone to the public media after the retaliation might well be taken into account in evaluating the public-concern nature of his grievance at an earlier stage.

Second, defendants' arguments as to the validity of the seemingly outrageous assignment that defendants inflicted on Smith *after* he had spoken out on the smoking issue (arguments that, if established, would also show the absence of retaliatory motive) cannot survive the granting of the necessary favorable inferences to Smith. No trier of fact is obligated as a matter of law to accept what in surface terms seems a pretextual cover story. On that score this Court, like the factfinder at trial, is not required to accept defendants' testimony about the claimed legitimacy of the investigation and the reason for enlisting Smith in it, given the suspicious timing and the total absence of some internal records that would normally accompany such matters.

### Actionable Conspiracy

 As with the matters just discussed, the issue of conspiracy vel non is for the trier of fact. Circumstantial evidence—inferences from all of the circumstances, including such a facially bizarre assignment coming hard on the heels of Smith's complaints about the second-hand smoke issue—could reasonably lead to such a determination despite the ab-

---

1. Smith is granted leave for the filing of a response in excess of 15 pages in that respect.

2. Defendants' reply memorandum is not due to be filed until November 6. But the nature of summary judgment motions is that if any genuine issue of material (that is, outcome-determinative) fact is identified by the party opposing the motion, nothing that the movant can say by way of reply will make any difference—the motion has to fail.

sence of any express admissions by defendants or any other direct evidence.

But that potential finding of a conspiracy is simply relevant to legal questions that would affect the direct liability of individual defendants under 42 U.S.C. § 1983,[3] for example by bearing on the admissibility of evidentiary matters under Fed.R.Evid. 801(d)(2)(E). Defendants are right in their contention that Smith has not asserted the type of "class-based, invidiously discriminatory animus" that fits Section 1985(3), as definitively cabined by *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) and its progeny.

### Section 1983 Liability

■ As already indicated, it is basic doctrine that the Section 1983 responsibility of individual defendants must be direct and not vicarious. In those terms, and once again with the required inferences drawn in Smith's favor for summary judgment purposes:

1. Each of defendants James Fruin, Robert Biebel, Steven Kuhn and William Murray was directly involved in what must be assumed for present purposes to have been a pretextual and retaliatory assignment in response to Smith's exercise of his First Amendment rights. That is enough to keep those four defendants in the case.

2. Defendant John Klein ("Klein") was apprised of the assertedly retaliatory assignment. If a trier of fact were to find that he turned a blind eye to the matter rather than acting to correct it as Smith had asked, cases such as *Rascon v. Hardiman,* 803 F.2d 269, 276 (7th Cir.1986) would support a finding of Section 1983 liability on Klein's part as well.

3. If the evidence in Smith's favor is credited (as it must be for the moment), former Superintendent of Police Leroy Martin had a direct involvement akin to Klein's: his having been notified of the unlawful conduct of his subordinates, without then taking appropriate action to cor-

rect it as was within his power. Again the principle of *Rascon* and like cases averts summary judgment and leaves the matter to the triers of fact.

### Conclusion

Except for the dismissal of Smith's Section 1985(3) claim, material issues of fact preclude the entry of summary judgment in defendants' favor. This action will proceed to trial.

## MEMORANDUM OPINION AND ORDER ON MOTIONS IN LIMINE

■ Several motions in limine have been presented to this Court for decision following its approval of the final pretrial order that has readied this case for trial. Among those motions is one filed on behalf of plaintiff John Smith ("Smith") in which he seeks the disqualification of the Corporation Counsel for the City of Chicago ("City") from handling the defense of this action. Smith's counsel urges that the existence of Smith's punitive damage claim against the individual defendants—all of whom are members of City's Police Department—forecloses City's Corporation Counsel from representing those individuals.[1]

Part of the Illinois Tort Immunity Act, which otherwise permits a local governmental unit (such as City) to choose to indemnify its employees for liability arising out of employment-related activity, is this prohibition (found at the end of Ill.Rev.Stat. ch. 85, ¶ 2-302):

It is hereby declared to be the public policy of this State, however, that no local public entity may elect to indemnify an employee for any portion of a judgment representing an award of punitive or exemplary damages.

Smith points to that prohibition as creating an inherent conflict for City's own lawyers—its Corporation Counsel and his assistants—in representing the individual defendants who are potentially subject to such damages.

---

3. Further citations to Title 42 provisions will simply take the form "Section—."

1. City itself is not a defendant here. Hence the Corporation Counsel cannot advance the usual justification: that he is in the case anyway, working for the employer that pays his salary.

City's Corporation Counsel rejects that argument, contending instead that an earlier provision of the same statute (*id.* ¶ 2–302(a)) grants City an unlimited right to "[a]ppear and defend against the claim or action." On that reading, City (through its Corporation Counsel) could handle the case through the trial and to judgment—although the Corporation Counsel does acknowledge that if the trier of fact were to return a verdict against any defendant, any portion of the judgment that was designated as punitive damages would have to be borne by the individual personally. And Corporation Counsel's Mem. 3–4 says that possibility was explained to the individual defendants up front.

But that response reflects an incomplete analysis of the problem. This Court has had occasion to address the subject in at least two of its published opinions, *Clay v. Doherty,* 608 F.Supp. 295, 305 (N.D.Ill.1985) and *Coleman v. Frierson,* 607 F.Supp. 1566, 1572–73 (N.D.Ill.1985). More recently the Court of Appeals for the Sixth Circuit has dealt with the identical question when posed by defendant police officers who had also been sued in a 42 U.S.C. § 1983 action—a situation wholly parallel to this one, though presented to the court by the defendants rather than by the plaintiff (*Gordon v. Norman,* 788 F.2d 1194, 1196 (6th Cir.1986) (footnotes omitted)):[2]

> Defendants Norman, Prows, and Martin initially argue that they were deprived of their right to a fair trial and were deprived of due process of law because their attorney, the Law Director of the City of Knoxville, experienced a conflict of interest in representing them. Thus, defendants assert, even though the City of Knoxville was not a party to this action, it was the principal client of their attorney and this prevented him from exercising independent judgment in representing defendants.

*Gordon* analyzed the problem in depth and at substantial length. After the Court of Appeals there initially set out and quoted from the Second Circuit's decision in *Dunton*

*v. County of Suffolk,* 729 F.2d 903 (2d Cir. 1984) (a decision to which this Court had declined to adhere in its own *Clay* and *Coleman* opinions), the Court was flattering enough to discuss and quote from *Coleman* in some detail in support of its own determination that *Dunton* should not be followed.[3] And although *Gordon* ultimately rejected defendants' due process arguments on the facts that were presented there—more specifically, because of defendants' failure to show any prejudice flowing from the complained-of representation—the Court of Appeals concluded in this fashion (788 F.2d at 1199 & n. 5 (emphasis in original)):

> At the same time, we are aware of the great potential for conflict in this field. For this reason, we agree with *Coleman, supra,* that there is a "need for sensitivity to the risk of conflict" in § 1983 suits, 607 F.Supp. at 1572, and that the judge and the parties have joint responsibility to guard interests that are actually threatened.[5]

---

[5] This is a significant case in a troublesome area. Government attorneys have routinely represented individual defendants as have insurance counsel, post *Monell* [*v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611] without any thought for the most part as to conflict of interest. The *bar* should be aware of potential ethical violations and possible malpractice claims.

This opinion has already suggested the lack of "sensitivity to the risk of conflict" that has been displayed by the Assistant Corporation Counsel. It is plain that insufficient heed has been given to the restraints imposed by Rule 1.7 of the Rules of Professional Conduct in force in this District Court, or to the teachings of the Comments that accompany Rule 1.7. There is of course a different and wholly nonproblematic way for the individual defendants and City to deal with the problem: If defendants were instead to be represented by lawyers whose sole and undivided loyalty was owed to defendants themselves—that is, whose full-time

---

**2.** To complete the parallel to the present case, the Tennessee Code relevant to the decision in *Gordon* also had an indemnification provision for the officers—one that also prohibited any indemnification for punitive damages.

**3.** *Gordon* also quoted from *Clay* in the course of the Court's discussion.

employer did *not* have a potential interest in a finding of wilfulness on defendants' part, and a consequent award of punitive damages, to accompany any finding that defendants had violated Smith's constitutional rights [4]— then an ultimate holding that either (1) found no liability at all on defendants' part or (2) found that they were liable for compensatory damages alone would entitle defendants to full indemnification, *including* the payment of all attorneys' fees that they had incurred.

Thus the matter seems to boil down to one of convenience and perhaps economics: It may be easier, and maybe cheaper as well, to have the Corporation Counsel handle the case. But that explanation alone cannot carry the day in the present posture of the case, given the ethical constraints implicated here. Some further submission by the Corporation Counsel is really needed to beef up the incomplete response that they have provided at this point, and they are given leave to do so on or before November 2, 1992.[5] This Court will then deal with the current motion.

---

**4.** Again it is recognized that on the *liability* issue alone, defendants and City are on parallel tracks (or, more accurately, on the same track). But as the text discussion reflects, that is not at all the sole issue that defendants' counsel will be forced to confront.

**5.** Smith's counsel is also authorized to supplement his motion on the same timetable if he wishes to do so.