Francis MARDEROSIAN, Plaintiff,

v.

Thomas P. SHAMSHAK, William D. Ekelberry, Kevin A. Hayes, Robert W. Gagne, Walter B. Johnson, Sr., All individually and as Officials of the Town of Spencer and the Town of Spencer, Defendants.

Civil Action No. 94-40088-XX-NMG.

United States District Court,
D. Massachusetts.

Jan. 16, 1997.

Robert J. Hennigan, Jr., Power & Hennigan, Worcester, MA, for Francis Marderosian.

Michael J. Akerson, Edward P. Reardon, Austin M. Joyce, Reardon & Reardon, Worcester, MA, John W. Capone, Worcester, MA, for Thomas P. Shamshak.

John W. Capone, Worcester, MA, for William D. Ekelberry, Kevin A. Hayes, Robert W. Gagne, Walter B. Johnson, Sr., Town of Spencer.

## MEMORANDUM OF DECISION

SWARTWOOD, United States Magistrate Judge.

### Nature of the Proceeding

The Defendant, Thomas P. Shamshak, has filed a Motion for Relief From Judgment (Docket No. 50).

### Nature of Case

Plaintiff, Francis Marderosian ("Mr. Marderosian"), filed a civil rights action against Thomas P. Shamshak ("Chief Shamshak"), former Chief of Police of the Town of Spencer ("Town") and Members of the Town's Board of Selectmen, individually and in their official capacities, for termination of Mr. Marderosian's employment as a part-time police officer and a member of the Spencer Fire Department without due process as required by the Fourteenth Amendment of the United States Constitution. Count I sought damages pursuant to 42 U.S.C. § 1983 for deprivation of a property interest; Count II sought damages pursuant to 42 U.S.C. §§ 1983 and 1985 for deprivation of a liberty interest; and Count III stated a claim for libel against Chief Shamshak.

### Prior Proceeding

This action was referred to me for all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73 and was tried to a jury on October 27, 1995, which returned a verdict on special questions. On November 3, 1995, Judgment entered for the Plaintiff on Count I in the amount of $20,000 for actual damages, punitive damages against Chief Shamshak in the amount of $25,000 and punitive damages against Selectmen William Ekelberry and Kevin Hayes in the amount of $1,000 each.[1] The jury returned a verdict for De-

---

1. The claims in Counts I and II against Selectman Robert W. Gagne were dismissed prior to

trial and those same claims against Selectman Walter B. Johnson were dismissed at the conclu-

fendants on Count II. On December 7, 1995, an Amended Judgment entered awarding Mr. Marderosian counsel fees in the amount of $14,833.88 and expenses in the amount of $1,043.10. In all other respects, the Amended Judgment was identical to the original Judgment.

### Motion for Relief From Judgment

Chief Shamshak has filed a motion for relief from judgment pursuant to Fed. R.Civ.P. 60(b)(6) asserting that there are exceptional circumstances which justify the extraordinary relief of setting aside the jury's verdict. As grounds for his motion for relief from judgement, Chief Shamshak asserts that he had an actual conflict of interest with his trial counsel at the time of trial; that his trial counsel withheld from the Court and jury's consideration evidence on the issue of Chief Shamshak's lack of recklessness or callous disregard for the constitutional rights of Mr. Marderosian as a means for concealing the legal advice given to Chief Shamshak by trial counsel; and that trial counsel, with knowledge that he had advised Chief Shamshak to terminate Mr. Marderosian without a hearing, acknowledged to the jury that Chief Shamshak had acted with deliberate indifference to Mr. Marderosian's federally protected rights.

In support of his motion for relief from judgment, Chief Shamshak has filed an Affidavit which states in relevant part as follows:

3. During the period September 10, 1990 through July 25, 1995, I served as Chief of Police of the Town of Spencer (hereinafter, "The Town"). I was appointed to that position by the Selectmen of the Town.

4. During the entire time of my tenure as the Town's Chief of Police, John W. Capone, Esquire, served in the position of Town Counsel. At the time of my appointment to the position of Chief, I was informed by the Board of Selectmen that Attorney Capone was available for consultation in any legal matter involving the Police Department, including employee related matters.

5. Toward the end of February, 1993, I became aware of the results of an investigation involving Officer Marderosian.

. . . .

9. On February 27, 1993, I spoke to Attorney Capone for approximately 20 minutes. The call took place a [sic] midday. I disclosed to Mr. Capone that an internal investigation on complaints received against Officer Francis Marderosian had been completed and that I was persuaded that the charges were meritorious. I explained to Attorney Capone that Mr. Marderosian was an intermittent police officer and that he had not been appointed as a permanent member of the department. I told Attorney Capone that in my opinion, the charges warranted Mr. Marderosian's removal from his position of police officer.

10. Attorney Capone advised me that Mr. Marderosian's status was that of an "at will employee." Attorney Capone advised me that as an at will employee, Mr. Marderosian could be removed from his position without notice or hearing and that it was not necessary to prove that Mr. Marderosian was being terminated for just cause. Attorney Capone further advised me that Mr. Marderosian had no right to contest the termination under either the Union contract or Civil Service law. Mr. Capone advised me that there would be no legal impediment to my recommending to the Board of Selectmen that Mr. Marderosian be terminated and that action should be taken before the Board immediately to protect the Town from liability.

11. At the conclusion of my telephone conversation, I telephoned Kevin Hayes, a Member of the Board of Selectmen and related to him the contents of my telephone conversation with Mr. Capone.

12. At the Selectmens' hearing of March 1, 1996, I presented the situation of Mr. Marderosian on the basis of the advice

sion of Defendants' case. Mr. Marderosian's libel claim against Chief Shamshak (Count III) was dismissed prior to trial.

I had received from Mr. Capone on February 27, 1993, without deviation.

13. At no time from the initiation of this lawsuit until the present was I ever advised by Mr. Capone that our telephone conversation of February 27, 1993, or his advice to me, might be relevant to the jury's consideration of the assessment of punitive damages against me. Likewise, I was never advised that Mr. Capone could or should have been a witness on my behalf.

*Mem. of Def., Thomas P. Shamshak, in Sup. of Mot. for Relief from J.* (Docket No. 51) ("*Def's. Memo*"), at *Ex. 1* (Aff. of Thomas Shamshak in Sup. of Mot. for Relief from J.).

Chief Shamshak also submitted a copy of his telephone bill for the period of February 21–March 20, 1993, which shows that he made a twenty minute telephone call to Mr. Capone on February 27, 1993, which lasted twenty minutes. *See Further Aff. of the Def. Thomas P. Shamshak, in Sup. of Mot. for Relief from J.* (Docket No. 54).

### Standard of Review

 A party may seek relief from judgment in accordance with Fed.R.Civ.P. 60(b) for any of the reasons specifically set forth in that rule or for "any other reason justifying relief from the operation of the judgment." *Id.* 60(b)(6).[2] "[B]ecause Rule 60(b) is a vehicle for 'extraordinary relief', motions invoking the rule should be granted 'only under exceptional circumstances'." *de la Torre v. Continental Ins. Co.,* 15 F.3d 12, 14–15 (1st Cir.1994) (quoting *Lepore v. Vidockler,* 792 F.2d 272, 274 (1st Cir.1986)). A threshold condition for granting Rule 60(b) relief is that the moving party "must give the trial court reason to believe that vacating the judgment will not be an empty exercise". *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transport. Co.,* 953 F.2d 17, 20 (1st Cir.1992). Once that condition has been met, the court must then consider the following criteria:

"(1) timeliness, (2) the existence of exceptional circumstances justifying extraordinary relief, and (3) the absence of unfair prejudice to the opposing party." *Id.* As part of its analysis "an inquiring court should assume the truth of fact-specific statements contained in a Rule 60(b)(6) motion" and determine whether these facts, as alleged, warrant relief. *See Id.* at 18.

### Discussion

 Chief Shamshak asserts that if at trial he had had the benefit of independent counsel, the jury would have heard evidence which would have tended to establish that he did not act with the necessary intent to warrant an assessment of punitive damages. It cannot be stated with any certainty that if the jury in this case had been told that Chief Shamshak's actions from February 27 to March 1, 1993 were based solely on the advice of Town Counsel, that it would not have awarded punitive damages against Chief Shamshak. From the evidence, it was reasonable for the jury to conclude that Chief Shamshak did not like Mr. Marderosian and given a pretense for doing so, would have terminated him as a part-time police officer. However, it is plausible that if the jury had believed that Chief Shamshak's actions in recommending Mr. Marderosian's termination were as a result of his conversations with Town Counsel, they may have come to a different result. Therefore, I cannot find that the vacating of this judgment would be an empty exercise. Thus, I will now address whether Chief Shamshak has satisfied the three criteria which are a precondition to relief under Rule 60(b)(6).

### 1. Whether Chief Shamshak's Rule 60(b)(6) Motion Was Timely Filed.

 "A Rule 60(b)(6) motion 'must be made within a reasonable time'. What is 'reasonable' depends on the circumstances. Thus, a reasonable time for purposes of Rule 60(b)(6) may be more or less than the one-

**2.** A party seeking relief from judgment under Rule 60(b) may file a motion pursuant to clause (6) only if none of the specific reasons justifying relief enumerated in clauses (1)–(5) apply. *Cotto v. United States,* 993 F.2d 274, 278 (1st Cir.1993).

None of Chief Shamshak's stated grounds for relief fall within clauses (1)–(5) and therefore, he has properly requested relief pursuant to clause the so-called catchall provision.

year period established for filing motions under Rule 60(b)(1)–(3)." *Cotto,* 993 F.2d at 280 (internal citations omitted).

Chief Shamshak filed a timely appeal of the judgment against him in this case. Thereafter, on October 22, 1996, less than one year after entry of the original judgment and less than ten months after entry of the Amended Judgment, Chief Shamshak filed his Rule 60(b)(6) motion. Given the nature and complexity of Chief Shamshak's arguments, I do not find this delay to be unreasonable.

### 2. *Whether Mr. Marderosian Would Be Prejudiced If This Motion Is Allowed.*

At the time of the hearing on this action, I was informed that all amounts awarded to Mr. Marderosian in accordance with the Amended Judgment have been paid, except the award of punitive damages against Chief Shamshak. At the hearing, Chief Shamshak's counsel argued that since the dual purposes behind the awarding of punitive damages are to punish the wrongdoer and deter such conduct in the future and since Mr. Marderosian has been awarded (and paid) his actual compensatory damages and reasonable attorney's fees, he will not be prejudiced if this motion is granted. Other than a passing reference to the fact that granting this motion would "defeat the 'reasonable expectations of the party for whom judgment entered'" (*Pl's Opp. to Def. Shamshak's Mot. for Relief from J.* (Docket No. 53), at p. 5), Mr. Marderosian does not contest Chief Shamshak's assertion that he will not be prejudiced if this motion is granted. I find Chief Shamshak's argument persuasive. If this motion is granted, then the only issue which will be retried is Mr. Marderosian's procedural due process claim against Chief Shamshak in his individual capacity. Therefore, it would not be necessary to retry the entire case. Furthermore, as pointed out by Chief Shamshak, the policy of awarding punitive damages against individuals in Section 1983 claims is not intended to compensate the victim. *See Davet v. Maccarone,* 973 F.2d 22, 27 (1st Cir.1992) and cases cited therein. Therefore, vacating the award of punitive damages against Chief Shamshak would not prejudice Mr. Marderosian.

For the reasons set forth above, I find that granting Chief Shamshak's Rule 60(b)(6) motion will not prejudice Mr. Marderosian. I will now address whether Chief Shamshak has established the existence of extraordinary circumstances sufficient to warrant that he is entitled to relief from judgment.

### 3. *Whether There Are Extraordinary Circumstances Which Warrant This Court Granting Chief Shamshak's Request for Relief From Judgment.*

The focus of this discussion will be the alleged conflict of interest between Town Counsel and Mr. Marderosian, the actions of Town Counsel during trial and whether or not Town Counsel's actions were prejudicial to Chief Shamshak's defense. For purposes of my analysis, as instructed by the First Circuit, I have assumed the truth of the facts stated by Chief Shamshak in his Affidavit unless contradicted by other evidence presented at trial or during Chief Shamshak's deposition, a portion of which has been submitted in opposition to this motion.

In support of his assertion that he was prejudiced by a conflict of interest arising from his trial counsel's simultaneous representation of the Town, Chief Shamshak cites *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984). In *Dunton,* the Second Circuit recognized that "[m]unicipalities commonly provide counsel for their employees and themselves when both municipality and employee are sued." *Id.* at 907. Although that arrangement may still be the norm, it is not without substantial risk to both the municipality and its employee.

"[S]ince the Supreme Court's decision in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), municipalities can be held libel under Section 1983 for employees' actions taken pursuant to municipal policy. After Monell, the interests of a municipality and its employee as defendants in a Section 1983 action are in conflict. A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial

actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it can not assert the good faith immunity of its employees as a defense to a section 1983 action."

*Dunton*, 729 F.2d at 907 (internal citations omitted).

In Dunton, the county attorney represented both a county police officer and the county in a civil rights action brought under 42 U.S.C. § 1983. Although the county attorney, in representing the police officer, included in his answer an affirmative defense that the police officer was acting in his official capacity in arresting Mr. Dunton, during the trial he argued to the jury that the police officer was acting on his own in assaulting Mr. Dunton and was not acting as a county employee. In vacating the judgment against the police officer, the court concluded:

> The conflict of interest not only prejudiced [the police officer], it may also have resulted in an improper benefit to the municipal defendants. The claim that [the police officer] acted under color of state law was never presented to the jury in the trial below. If [the police officer] had the opportunity to contend that he did not act under color of state law but was immune from liability based on good faith actions within the scope of his duties, Suffolk County or the Police Department may still have been found liable under Section 1983.

*Dunton*, 729 F.2d at 910.

In *Gordon v. Norman*, 788 F.2d 1194 (6th Cir.1986), a contrary result was reached, in part, because the municipality was not a party to the lawsuit, but also, because the city's lawyer, who represented the defendants, "vigorously defended the lawsuit and did not take any positions before the jury that were inconsistent with his client's interests." *Id.* at 1198. In *Gordon* the Sixth Circuit made several observations which are relevant to this discussion:

> In *Coleman v. Frierson*, 607 F.Supp. 1566 (N.D.Ill.1985), defendants moved for relief from a default judgment claiming counsel's representation of them gave rise to a conflict of interest warranting such relief under the rational of Dunton. Judge Shadur concluded there was no clear basis for reading Dunton as creating a universal per se conflict rule. Rather, the court construed Dunton as reasserting " 'the need for sensitivity to the risk of conflict throughout the course of a lawsuit involving multiple representation' " ... especially in cases—like those proceeding under Monell—where the differing interest among clients may not be immediately apparent. The court indicated that whenever an actual conflict arises, the judge and the parties have the joint responsibility to guard any threatened interest. In denying defendant's motion, the court noted that even if the multiple representation created a risk of conflict, no conflict was ever realized.
>
> ....
>
> in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), [a criminal case,] the Supreme Court made it clear that prejudice would be presumed only if the defendant demonstrated that counsel actively representing conflicting interest and that an actual conflict of interest adversely effected his lawyer's performance.

*Gordon*, 788 F.2d at 1197–1198 (internal citation and citations to quoted cases omitted). After reviewing the various authorities, the Sixth Circuit concluded that in order for a party to establish that he or she is entitled to relief from judgment as a result of an actual conflict of interest, the party must show that "[he was] adversely affected by the purported conflict or [his] trial counsel failed to exercise independent judgment depriving [him] of a fair trial." *Id.* at 1198.

 There is no question that Town Counsel's dual representation of the Town, its Selectmen and Chief Shamshak presented a conflict of interest. Although in hindsight the potential conflict of interest should have been readily apparent, at the time of trial, I

did not recognize this conflict and therefore, failed to inquire of the parties as to whether or not they were aware of the conflict, the potential prejudice which this conflict presented and whether they knowingly and voluntarily wished to proceed with Town Counsel as trial counsel in this matter. Chief Shamshak as a lay person cannot be expected to recognize the potential conflict and therefore, cannot be said to have waived his objection to multiple representation. *See Dunton*, 729 F.2d at 909. Where an actual conflict of interest between trial counsel and one of the parties exists "prejudice would be presumed only if the [party] demonstrated that counsel actively represented conflicting interest and that an actual conflict of interest adversely affected his lawyer's performance." *Gordon*, 788 F.2d at 1198 (paraphrasing the Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. at 350, 100 S.Ct. at 1719). I must now determine whether Chief Shamshak was prejudiced by this conflict.

Chief Shamshak's statement in his Affidavit that he had a conversation with Town Counsel on February 27, 1993 before the March 1, 1993 Selectmens' meeting at which they terminated Mr. Marderosian is corroborated by Plaintiff's Exhibit No. 11 (Selectmens' Executive Session Minutes for March 1, 1993). Specifically, there is a reference in the Executive Session Minutes that "Chief Shamshak said that he'd spoken to Town Counsel Capone on Saturday [February 27, 1993]." During the trial, attorney Capone did not elicit testimony from Chief Shamshak or Selectmen Ekelberry and Hayes concerning his conversation with Chief Shamshak, nor did he draw the jury's attention to that reference in *Exhibit 11*.

Mr. Marderosian points out that Chief Shamshak never mentioned his conversation with Town Counsel when given the opportunity to do so at his deposition, on cross-examination by Mr. Marderosian's counsel or in response to a question by me during his cross-examination. He further points out that during Chief Shamshak's deposition testimony and testimony at trial, he was very clear that it was his opinion and recommendation to the Selectmen that Mr. Marderosian could be terminated without a hearing

because he was a part-time police officer. On the surface, Mr. Marderosian's assertion that Chief Shamshak effectively waived this issue by failing to testify at his deposition and at trial that he relied on advice of counsel is appealing. At the same time, it underscores the extent to which Chief Shamshak was prejudiced by the actual conflict of interest under which his counsel labored. It is inconceivable that independent counsel would not have elicited from Chief Shamshak that in addition to his own opinion, he also relied on advice of Town Counsel. Additionally, independent counsel would in all likelihood have called Mr. Capone as a witness in this case and Mr. Capone may then have had to withdraw from the case. Additionally, the fact that Mr. Capone may have given Chief Shamshak incorrect advice could explain his reluctance to question Chief Shamshak concerning their conversation or to advise Chief Shamshak of the importance of that conversation on the issue of the reasonableness of Chief Shamshak's actions.

From my observation of this trial, Town Counsel was vigorous in his defense of all of the Defendants, including Chief Shamshak. In fact, during his closing argument he attempted to distance Chief Shamshak from the Selectmens' decision to terminate Mr. Marderosian. The following excerpt from Town Counsel's closing argument is relevant on this point:

> He also talked about, in going through the individual counts with Mr. Hayes and Mr. Ekelberry and the chief, particularly with the chief, his acts—he suspended Marderosian. There is no count for wrongful suspension here. Okay. This is about termination. He acted to make recommendations. He investigated and he made recommendations, and he gave the selectmen, to the best of his ability, what he knew about the case and the parameters of the case, and that was it. And then they voted and they terminated. So, individually, he stopped short of any action, action that affected Mr. Marderosian. He was the fact-finder if you will.

*Def's Mem.*, at *Ex. 2* (Trial Transcript), at pp. 4–51–52. In other words, Town Counsel was urging the jury not to punish Chief

Shamshak as the messenger who brought Mr. Marderosian's alleged misconduct to the Selectmens' attention.

However, at about this same point in Town Counsel's closing argument, Chief Shamshak asserts that Town Counsel conceded that Chief Shamshak acted with deliberate indifference to Mr. Marderosian's rights. Specifically, Chief Shamshak points to the following statement made by Town Counsel in his closing argument:

> Recklessness, individuals, Mr. Hayes, Mr. Ekelberry, Chief Marderosian—Chief Shamshak. Is there a conscious disregard—a conscious disregard—of the known probable consequences of an act here? Is there a conscious effort to ignore an individual's rights? Yes. Mr. Hayes said, in answer to Mr. Hennigan's questions, and also in the deposition that was read to you, I knew that there were rights here. I knew about the Open Meeting Law, the 48-hour notice. But—but—the knowledge of that was to be balanced against the other circumstances, the seriousness of the incident and the feeling and the need for immediate action. And he made that balance.
>
> And, remember, he made that decision also, with the knowledge—and Chief Shamshak confirmed this in his testimony—the knowledge that Mr. Marderosian had been talked to about this and had been given some details of what was going on and had been told, although Mr. Marderosian denies it because he was so blown away and shook up—had been told the chief was coming down to the meeting that night, Monday night, regularly scheduled meetings—always Monday nights—was going down there to ask that he be terminated.

Id. at pp. 4-52-53.

At the conclusion of the evidence, the jury was well aware that Mr. Marderosian was terminated without a hearing, and that a hearing was required. Trial counsel's argument could be interpreted not as conceding that the Defendants had acted with reckless or callous indifference to Mr. Marderosian's "constitutional rights", but rather to justify their action and to argue further, that Mr.

Marderosian had advance notice (although not 48 hours notice) that Chief Shamshak was going to the Selectmens' meeting to recommend that he be terminated. However, the problem arises that he made this argument with the knowledge that he had agreed with Chief Shamshak's decision to terminate Mr. Marderosian without a hearing. If Chief Shamshak had testified that he was acting upon advice of Town Counsel and Town Counsel had referenced that fact at this point in his argument, the jury could have concluded that although Chief Shamshak had recommended Mr. Marderosian be terminated without notice or hearing, he had relied on advice of counsel and therefore, did not act with evil motive or intent. Furthermore, Town Counsel's concession that the individual Defendants acted with callous disregard for Mr. Marderosian's rights may have improperly benefited the Town because it inferred that the individual Defendants were acting outside the scope of their authority.

It is obvious that there was an actual conflict of interest between Chief Shamshak and Town Counsel, who was also acting as his trial counsel and that Town Counsel's failure to advise Chief Shamshak to testify as to his conversation with Town Counsel, a conversation during which Town Counsel may have given Chief Shamshak erroneous legal advice, resulted in prejudice which may well have affected the jury's verdict in this case. Additionally, I am convinced that Chief Shamshak's interests may have been prejudiced by the actual conflict of interests created by Town counsel's simultaneous representation of him and the Town. Therefore, I am allowing Chief Shamshak's motion for relief from judgment.

### Conclusion

1. Motion of the Defendant, Thomas P. Shamshak, for Relief From Judgment (Docket No. 50) is allowed and a new trial is ordered with respect to Mr. Marderosian's due process claim against Chief Shamshak in his individual capacity.